[No. 55863-3-I.   Division One.   March 20, 2006.]

FARMERS INSURANCE COMPANY OF WASHINGTON, *as Subrogee, Appellant,* v. WAXMAN INDUSTRIES, INC., ET AL., *Respondents.*

*Craig Evezich* (of *Evezich Law Offices, P.L.L.C.*) and *Howard M. Goodfriend* (of *Edwards Sieh Smith & Goodfriend, P.S.*), for appellant.

*Joel E. Wright, Mary E. Depaolo*, and *Peter E. Sutherland* (of *Lee Smart Cook Martin & Patterson, P.S., Inc.*), for respondents.

¶1 BECKER, J. — Farmers Insurance Company sued Waxman Industries, alleging that Waxman had the liability of a manufacturer for a broken water supply line that was labeled with Waxman's name. When Waxman did not respond, Farmers obtained a default judgment. Because Waxman did not present facts sufficient to support a prima facie defense to the products liability claim, we reverse the order vacating the judgment.

¶2 A home covered by a Farmers insurance policy suffered major water damage in April 2002. The water leaked from a one-half inch wide supply line that conducted cold water from the main water supply to the kitchen sink. The broken supply line had a label affixed to it bearing the Waxman name. Farmers paid for repairs and lost rental costs and then contacted Waxman with a claim for reimbursement.

¶3 At Waxman's request, Farmers sent the broken line to Waxman for inspection in late April 2003. In July, Farmers twice inquired about the status of the claim. Waxman did not respond to these inquiries. Farmers filed suit, including claims for product liability and breach of implied warranty. The complaint alleged that the leakage occurred because of a defect in the water supply line. The complaint stated a cause of action for products liability and alleged that Waxman was strictly liable as the "manufac-

turer" of the defective line because Waxman either constructed it or sold it under the Waxman trade name. The summons and complaint were served on Waxman in April 2004.

¶4 Waxman did not appear or answer. In June 2004, Farmers obtained a default judgment for $86,328.79. Farmers informed Waxman about the judgment in October. In November, Farmers refused Waxman's request to stipulate to vacation of the judgment.

¶5 In January 2005, Waxman appeared and moved to set aside the judgment. The explanation for the failure to appear or answer was that there had been a misunderstanding. The lawsuit had been forwarded to Waxman's insurance carrier, and an adjuster for the carrier inaccurately represented to Waxman that the lawsuit was in the hands of an attorney. On February 7, the trial court granted the motion to vacate, subject to Waxman's payment of costs plus $2,500 in terms. Farmers appeals from the order granting the motion to vacate.

¶6 Default judgments are disfavored in the law because it is the policy of the law that controversies be determined on the merits rather than by default. A proceeding to vacate a default judgment is equitable in character, and relief is to be afforded in accordance with equitable principles. We review the trial court's disposition of a motion to vacate a default judgment for abuse of discretion. An abuse of discretion will be more readily found if a trial court has refused to set aside a default judgment. *White v. Holm*, 73 Wn.2d 348, 351-52, 438 P.2d 581 (1968). However, even an order granting a motion to vacate will be reversed if the trial court exercises its discretion on untenable grounds. *See Prest v. Am. Bankers Life Assurance Co.*, 79 Wn. App. 93, 97-99, 900 P.2d 595 (1995).

¶7 In this case, the dispositive consideration is that Waxman did not present substantial evidence to support a meritorious defense when it moved to vacate. A motion to vacate a default must be supported by an affidavit setting forth "the facts constituting a defense to the action

or proceeding." CR 60(e)(1). The prime purpose of the rule is to prove to the court that there exists, at least prima facie, a defense to the claim. This avoids a useless subsequent trial if the defaulted defendant cannot bring forth facts to make such a showing when seeking to vacate the default. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 583, 599 P.2d 1289 (1979). The affidavit must set out facts constituting a defense; it cannot merely state allegations and conclusions. *Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson*, 95 Wn. App. 231, 239-40, 974 P.2d 1275 (1999), *review denied*, 140 Wn.2d 1007 (2000).

¶8 Waxman's motion stated that defects in hoses "often" can be attributed to component parts of the hose manufactured by some other entity. Waxman also stated that alleged defects "can also be" the result of improper maintenance. The motion asserted that "Waxman would be able to fully explore these defenses if provided the opportunity through discovery."

¶9 The response by Farmers pointed out that Waxman had offered mere allegations and speculation without stating facts constituting a defense. Farmers again asserted that Waxman was the manufacturer of the supply line and noted that the line was clearly marked with Waxman's name. Two photographs of the supply line accompanied the response. They show a label attached to the supply line that reads, "Waxman Industries Faucet Connector," with inventory and bar code numbers.

¶10 In reply, Waxman submitted a declaration by Michael Pendry, an officer of the company. According to Pendry, some other entity manufactured the allegedly defective line, and Waxman's only role was to distribute it:

> Waxman did not manufacture or furnish the water connectors at issue in this suit or any component parts. At this time, Waxman is unaware of the specific entity that manufactured the water connectors. The product is shipped to Waxman from a manufacturer already packaged. Waxman purchases the product to distribute to retailers.

Waxman's reply memorandum merely reiterated Pendry's statements and did not cite to the statute or to case authority.

¶11 The four sentences quoted from Pendry's declaration do not support a prima facie defense to the underlying claim. They do not come to grips with the allegation that Waxman's name was used in the marketing of the product. It is true that a product seller acting as a mere distributor ordinarily does not have the liability of a manufacturer. RCW 7.72.010(2). But as Farmers points out, this rule has an exception where the product is marketed under a trade name of the seller:

> (2) A product seller, other than a manufacturer, shall have the liability of a manufacturer to the claimant if:
>
>     . . . .
>
> (e) The product was marketed under a trade name or brand name of the product seller.

RCW 7.72.040(2)(e). The materials submitted by Waxman do not explain how Waxman could avoid a finding of liability simply by proving that some other entity actually manufactured the supply line.

¶12 Waxman contends it would be inequitable to let the judgment stand without allowing an opportunity to conduct discovery regarding possible defenses. To accept this argument as a general rule would mean that no default judgment could ever stand, because a default judgment by definition is entered before the discovery phase of litigation begins. Once, in a personal injury case where the defendant did not specify facts that would support vacation of a default judgment, we nevertheless held that the default judgment should be set aside as to damages only (not liability) because no discovery had taken place. *Calhoun v. Merritt*, 46 Wn. App. 616, 620-21, 731 P.2d 1094 (1986). We accepted the defendant's argument about the difficulty of challenging the damages awarded for pain and suffering without the opportunity for discovery, which would include a defense medical examination. The *Calhoun* rationale does

not apply to Waxman's request for more time to conduct discovery about possible defenses to liability. Waxman was unable to identify or substantiate a defense despite having the allegedly defective line in its possession for a number of months.

¶13 Shortly after the court granted the motion for default, Waxman filed a third party complaint for indemnification or contribution against two manufacturing companies. The complaint alleged that one or the other must have delivered the supply line to Waxman. Waxman now argues that the third party claim justifies vacation of the judgment, because a trial might result in the apportionment of all liability to one of the third party defendants. This argument is too little, too late. The argument is made for the first time on appeal. And whatever right of indemnity and contribution Waxman may be able to establish against other entities is not a defense to Waxman's own liability.

¶14 The requirement to set forth facts constituting at least a prima facie defense is not burdensome, as it does not demand conclusive proof. Waxman has not met its burden. Nothing in the record before the trial court demonstrates that Waxman could, in the words of *White v. Holm*, "carry a decisive issue to the finder of the facts in a trial on the merits." *White*, 73 Wn.2d at 353. Because Waxman lacked tenable grounds for asserting that its defenses were meritorious, the trial court abused its discretion in granting Waxman's motion to vacate.

¶15 Reversed and remanded for reinstatement of the default judgment.

Cox, C.J., and Coleman, J., concur.

Reconsideration denied April 25, 2006.