247 P.3d 18 (2011)
Monika JOHNSON, Respondent,
v.
RECREATIONAL EQUIPMENT, INC. (REI), a Washington corporation, Petitioner.
No. 65463-2-I.
Court of Appeals of Washington, Division 1.
February 7, 2011.
*20 V.L. Woolston, Perkins Coie LLP, Paul Spencer Graves, Attorney at Law, Seattle, WA, for Appellant.
Robert L. Christie, Jason Marc Rosen, Thomas P. Miller, Christie Law Group, PLLC, Seattle, WA, for Respondent.
DWYER, C.J.
¶ 1 The Washington product liability act (WPLA), chapter 7.72 RCW, sets forth a statutory form of vicarious liability whereby a product seller assumes the liability of a manufacturer where a product is marketed under the seller's brand name. Because permitting the product seller to attribute fault to the actual manufacturer would abrogate this provision of the WPLA, principles of comparative fault do not apply, notwithstanding the possibility that statutory contribution may thereby be precluded. Such a result is not in contravention of our state's statutory comparative fault system, as commercial entities can themselves contract to allocate liability where the WPLA's vicarious liability provision applies.
¶ 2 Accordingly, we affirm the trial court's ruling that Recreational Equipment, Inc. (REI) is not entitled to seek to allocate fault to the manufacturer of the defective product that REI branded as its own. We also conclude that the trial court erred neither by finding REI strictly liable for the injuries caused by the defective product nor by ruling that any third party claim by REI against the manufacturer would be severed for trial.

I
¶ 3 In November 2007, Monika Johnson was riding her bicycle along a downtown Seattle sidewalk when the front carbon fiber fork of the bicycle, which attaches the bicycle's front wheel to its frame, "sheared from the steer tube suddenly and without warning." Clerk's Papers (CP) at 57. The fork and front wheel detached from the frame of the bicycle, and Johnson fell face first onto the sidewalk, sustaining serious injuries.
¶ 4 Johnson brought an action against REI pursuant to the WPLA, alleging that her injuries were caused by a defect in the carbon fiber fork. Both the bicycle and the carbon fiber fork, although not manufactured by REI, were marketed under REI's brand name, Novara. Johnson had purchased the Novara brand bicycle from REI in 2002. In 2005, she had taken the bicycle to REI for repairs following a collision with a car door. The Novara carbon fiber fork that fractured in November 2007 was installed on the bicycle during those 2005 repairs.
¶ 5 Johnson did not name the manufacturer of the fork, Aprebic Industry Company, Ltd., as a defendant in the action. REI filed a motion for partial summary judgment, seeking a ruling that it was entitled to ask the jury to allocate fault to Aprebic pursuant to Washington's comparative fault system, set forth in chapter 4.22 RCW, or, in the alternative, requesting leave to file a third party complaint against Aprebic. In response, Johnson filed a motion for partial summary judgment, asserting that REI was strictly liable for her injuries.
¶ 6 In support of her summary judgment motion, Johnson submitted to the trial court the declaration of Gerald Zaminski, a professional engineer, who examined the bicycle and the carbon fiber fork and destructively tested the fork. He found that the section of *21 the fork where the fracture occurred "was manufactured using a relatively small number of [carbon fiber] layers." CP at 106. He concluded that "[t]he small number of carbon fiber layers and their orientation interface resulted in the nucleation and propagation of cracking" and that this cracking "led to the catastrophic fracture and failure of the fork." CP at 106. According to Zaminski, the thickness of the carbon fiber layering where the fracture occurred was "just a fraction of the thickness of the carbon fiber layup elsewhere in the fork and steerer tube." CP at 106. He stated that the carbon fiber layers also "displayed voids, gaps, separations, and kinks, which are all indicative of defective manufacturing." CP at 106. Zaminski also observed that the carbon fiber layers at the point of the fracture were "starved of epoxy," making them "more susceptible to failure." CP at 107. Zaminski declared that "[t]he orientation and makeup of the carbon fiber layers can only occur during manufacturing; they are not defects that can occur after the product has been manufactured." CP at 107.
¶ 7 In response, REI submitted the declaration of David Mitchell, also a professional engineer, who inspected the bicycle and carbon fiber fork. Mitchell asserted that "there is presently insufficient information to rule out the accumulation of prior damage to the front fork as the cause of ultimate fork separation." CP at 178. He stated that "the nature of the fracture was not determined" and that additional laboratory testing should be conducted, including loading an examplar fork to determine its breaking strength. CP at 177. He also noted that the bicycle itself was "clearly a high mileage vehicle" that displayed "substantial wear and tear." CP at 176. Mitchell further suggested that a 2006 collision involving the bicycle, in which the rear wheel was damaged, could have contributed to the fork's fracture. He opined that "[i]f an element of that crash involved the front fork without creating visible damage, then it could be considered an initiating event for the fracture that serves as the basis for this law suit." CP at 178.
¶ 8 The trial court denied REI's motion to be permitted to seek to have the jury allocate fault to Aprebic and granted Johnson's motion for summary judgment on the issue of strict liability. The trial court ruled that "[d]efendant REI has the liability of a `manufacturer' as set forth in RCW 7.72.040(2)(e) and is strictly liable as a matter of law for all damages and injuries that plaintiff sustained."[1] CP at 196. The trial court further determined that the fact that Aprebic is the actual manufacturer of the fork has no bearing on REI's liability to Johnson, as "REI has the same liability as the actual manufacturer." CP at 196. The trial court concluded that Johnson could look to REI exclusively for compensation for her injuries. Although the trial court denied REI's request to attribute fault to Aprebic, it did grant to REI leave to join Aprebic as a third party defendant. However, the trial court noted that if REI did so, the court would "require separate trials under CR 20(b) to prevent delay and prejudice to [Johnson]." CP at 198.
¶ 9 REI sought discretionary review of the trial court's rulings. A commissioner of this court granted discretionary review of the trial court's rulings on three issues: (1) whether comparative fault principles apply to Johnson's claims, (2) whether REI is strictly liable for Johnson's injuries, and (3) whether any third party claim brought by REI against Aprebic should be severed for trial.

II
¶ 10 REI first contends that the statutory comparative fault system adopted by our legislature in 1986 demands that it be permitted to ask the jury to allocate fault to Aprebic for the fork's manufacturing defect. Because the WPLA expressly provides that REI, by selling the defective product under its own brand name, assumes the liability of the manufacturer, we disagree.
¶ 11 Questions of statutory interpretation are reviewed de novo. Happy Bunch, LLC v. Grandview N., LLC, 142 Wash.App. 81, 88, 173 P.3d 959 (2007). *22 Whether the WPLA permits a product seller that brands a defective product as its own to attribute fault to the actual manufacturer is a question of statutory interpretation; thus, we review the question de novo.
¶ 12 Our primary duty in interpreting a statute is to discern and implement legislative intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). Where a statute is unambiguous, we derive its meaning from the plain language of the statute. Campbell & Gwinn, 146 Wash.2d at 9-10, 43 P.3d 4. Moreover, we must construe statutes such that no provision is rendered meaningless or superfluous. Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996).
¶ 13 In 1981, our legislature codified the law of product liability by enacting the Washington product liability act (WPLA), chapter 7.72 RCW. The WPLA distinguishes between and imposes different standards of liability on manufacturers and product sellers for harm caused by defective products. See RCW 7.72.030, .040. As a general rule, manufacturers of defective products are held to a higher standard of liability, including strict liability where injury is caused by a manufacturing defect or a breach of warranty. RCW 7.72.030(2).[2] In contrast, product sellers are ordinarily liable only for negligence, breach of express warranty, or intentional misrepresentation. RCW 7.72.040(1). In limited circumstances, however, product sellers are subject to "the liability of a manufacturer," including where "[t]he product was marketed under a trade name or brand name of the product seller." RCW 7.72.040(2), (2)(e).[3]
¶ 14 The WPLA explicitly provides that "[a] product seller, other than a manufacturer, [has] the liability of a manufacturer" where "[t]he product was marketed under a trade name or brand name of the product seller." RCW 7.72.040(2), (2)(e). Although, absent this provision, only a manufacturer could be held liable for a manufacturing defect, RCW 7.72.030(2), our legislature has chosen to hold particular product sellers liable for such actsdespite the fact that the manufacturer of the product is necessarily the entity that actually caused the defect where a product is defectively manufactured.
¶ 15 Thus, by imposing liability on sellers of branded products for manufacturing defectswhich, inevitably, are caused by acts of the manufacturerour legislature created a statutory form of vicarious liability that enables the claimant injured by a defectively manufactured product to recover fully from the product seller where the seller branded the product as its own. See 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW & PRACTICE, § 3.1, at 116 (3d ed. 2006) ("In contrast to direct liability, which is liability for breach of one's own duty of care, vicarious liability is liability for the breach of someone else's duty of care."). Because a *23 seller of a branded product is vicariously liable for manufacturing defects, permitting REIthe product seller liable as the manufacturer pursuant to RCW 7.72.040(2)(e)to seek to allocate fault to Aprebicthe actual manufacturer of the defective product would undermine the statutory scheme of the WPLA.
¶ 16 REI incorrectly contends that RCW 7.72.040(2)(e), rather than creating a statutory form of vicarious liability, instead merely imposes on sellers of branded products the liability standard to which manufacturers are held. Thus, according to REI, although product sellers are ordinarily liable only for negligence, breach of an express warranty, or intentional misrepresentation, pursuant to RCW 7.72.040(1), sellers of branded products may also be found liable, pursuant to RCW 7.72.040(2)(e), for design and construction defects, inadequate warnings, or breach of an implied warrantyacts for which generally only manufacturers are held liable. See RCW 7.72.030(1), (2). For this reason, REI argues that it should be permitted to attribute fault to Aprebic. This contention fails for two reasons.
¶ 17 First, had our legislature merely imposed on sellers of branded products the liability standard of manufacturers, as REI contends that it did, the legislature would have engaged in a meaningless act. RCW 7.72.030(2) provides that "[a] product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction." The statute defines a manufacturer as "a product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product . . . before its sale to a user or consumer." RCW 7.72.010(2). Here, REI, because it does not design, make, fabricate, construct, or remanufacture bicycle forks, could never be found by a trier of fact to have acted as an actual manufacturer. Thus, it could never be proved to have acted in such a way so as to expose it to direct liability as a manufacturer. Indeed, were it otherwise, the legislature would not have needed to enact RCW 7.72.040(2)(e)by acting as a manufacturer, REI would be subject to direct manufacturer liability pursuant to RCW 7.72.030(2), rendering RCW 7.72.040(2)(e) superfluous. We will not assume that the legislature, by enacting RCW 7.72.040(2)(e), engaged in a meaningless act. See JJR Inc. v. City of Seattle, 126 Wash.2d 1, 10, 891 P.2d 720 (1995) ("When interpreting statutes, the court must assume that the Legislature does not engage in meaningless acts.").
¶ 18 Similarly, construing RCW 7.72.040(2)(e) such that a product seller could seek to allocate fault to a manufacturer would render the provision itself meaningless, as the product seller could always avoid the allocation of any fault to it simply by attributing fault to the actual manufacturer. See Whatcom County, 128 Wash.2d at 546, 909 P.2d 1303 (noting that statutes must be construed such that all language is given effect and no provision in rendered meaningless or superfluous). Certainly, as a factual matter, where a manufacturing defect is at issue, the manufacturernot the product selleractually caused the defect. Thus, were allocation of fault principles to apply, the manufacturer would necessarily be 100 percent responsible for the defectively manufactured product. Also necessarily, the product seller would avoid all such liability. Such a result would contravene our legislature's clear intent that a product seller that brands a product as its own assumes the liability of the manufacturer.[4]
¶ 19 Although RCW 7.72.040(2)(e) does not permit the product seller to seek to allocate fault to the manufacturer, this provision is not inconsistent with Washington's comparative fault system, set forth in chapter 4.22 RCW. REI argues to the contrary, contending that our legislature, by adopting comparative fault as the general rule for tort liability, endorsed the principle that "every entity responsible for committing a tort *24 should be liable to the plaintiff based on its own individual share of the total fault, no more and no less." Br. of Pet'r at 16. This overly broad assertion assumes that, by enacting RCW 4.22.070, our legislature eliminated vicarious liability, which it expressly did not do. Indeed, this specific statute itself explicitly retains principles of common law vicarious liability, in that it provides that "[a] party shall be responsible for the fault of another . . . where both were acting in concert or when a person was acting as an agent or servant of the party." RCW 4.22.070(1)(a). Similarly, the WPLA provision at issue here is a statutory imposition of vicarious liability wherein the seller of a branded product is held liable for the actions of the manufacturer, notwithstanding that the product seller did not actually manufacture the defective product.
¶ 20 Permitting REI to attribute fault to Aprebic would effectively abrogate RCW 7.72.040(2)(e), as the product seller would never assume the liability that the legislature intended the seller to bear where the seller brands the product as its own. "Authority is legion that implied repeals of statutes are disfavored and courts have a duty to interpret statutes so as to give them effect." Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co., 103 Wash.2d 111, 122, 691 P.2d 178 (1984). Because the WPLA and our state's statutory comparative fault system can be reconciled, we will not hold that our legislature intended, by passing the tort reform act of 1986, to impliedly repeal RCW 7.72.040(2)(e). See Bellevue Sch. Dist., 103 Wash.2d at 123, 691 P.2d 178 ("Repeals by implication are not favored and will not be found to exist where earlier and later statutes may logically stand side by side and be held valid."). We are loathe to find a silent repeal, and we decline to do so here.
¶ 21 Moreover, the fact that a product seller such as REI is not permitted to seek to allocate fault to the product manufacturer does not suggest an oversight by the legislature. Rather, it suggests a legislative intent to leave to the marketplace the means of allocating risk between commercial entities. The WPLA presupposes a contractual relationship between the product seller and the manufacturer, with or without an intermediary supplier, and, rather than legislatively imposing a means of risk allocation, assumes that sophisticated commercial parties will contract to allocate risk between themselves. Were we to hold that the WPLA permits REI to attribute fault to Aprebic, we would not only be acting in contradiction to the legislature's clear intentwe would also be upsetting three decades of reliance on a statute that allows product sellers and manufacturers to themselves determine how best to allocate risk.
¶ 22 REI incorrectly asserts that Washington case law requires that it be permitted to attribute fault to Aprebic. REI cites Hiner v. Bridgestone/Firestone, Inc., 138 Wash.2d 248, 978 P.2d 505 (1999), for the proposition that comparative fault principles apply in all product liability cases. The plaintiff therein, a motorist injured in a collision, brought a product liability suit against the manufacturer of the snow tires that had been installed only on the vehicle's front wheels. Hiner, 138 Wash.2d at 251, 978 P.2d 505. The snow tire manufacturer raised the affirmative defense of entity liability, "arguing that liability should be shared by the installer of the studded snow tires, the manufacturer of the Goodyear tires on the rear wheels, and the manufacturer of the Hyundai automobile." Hiner, 138 Wash.2d at 259, 978 P.2d 505.
¶ 23 The Court of Appeals affirmed the trial court's dismissal of the affirmative defense, reasoning that the comparative fault statute permitted a defendant manufacturer to apportion fault only to those entities liable to the plaintiff pursuant to the WPLA. Hiner v. Bridgestone/Firestone, Inc., 91 Wash.App. 722, 736, 959 P.2d 1158 (1998). Our Supreme Court reversed, holding that "[t]he plain language of the contributory fault statute does not limit apportioning fault only to other manufacturers and product sellers in a product liability case." Hiner, 138 Wash.2d at 264, 978 P.2d 505. The court based its reasoning on the broad definition of "fault" set forth in Washington's comparative fault statute, which states that "fault" includes "acts or omissions . . . that subject a person to strict tort liability or liability on a product liability claim." RCW 4.22.015.
*25 ¶ 24 The Hiner decision is inapposite. In Hiner, the manufacturer of the snow tires sought to attribute fault to other entities that, if found to be at fault, would be liable pursuant to theories of liability different than the theory of liability pursuant to which the manufacturer was liable. Here, REI contends that it should be permitted to attribute fault to another entity that, if found to be at fault, would be liable pursuant to precisely the same theory of liability"the liability of a manufacturer"as that of REI. REI, which pursuant to the WPLA has the liability of the manufacturer, seeks to attribute fault to Aprebic based on the theory that Aprebic is the actual manufacturer. Because REI is vicariously liable for Aprebic's acts, the basis of both entities' alleged liability is the same. Put another way, in Hiner the fault sought to be allocated was not the same fault. In Hiner, the fault sought to be allocated resulted from different acts; here, the fault sought to be allocated arises from the same acts. Hiner is not inconsistent with the decision we reach today.[5]
¶ 25 Moreover, the purpose of the comparative fault statute is "that fault be apportioned and . . . an entity be required to pay that entity's proportionate share of damages only." Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 294, 840 P.2d 860 (1992). Pursuant to RCW 7.72.040(2)(e), REI's proportionate share of damages is the full amount of damages. Thus, unlike in Hiner, no apportionment of fault is necessary to ensure that the defendant pays only its share of damages.
¶ 26 Applicable case law further undermines REI's assertion that it should be permitted to attribute fault to Aprebic. In Farmers Insurance Co. of Washington v. Waxman Industries, Inc., 132 Wash.App. 142, 148, 130 P.3d 874 (2006), we reversed vacation of a default judgment holding Waxman strictly liable as the "manufacturer" of a defective water supply line that was sold under the Waxman trade name. Waxman's motion to vacate stated that "defects in hoses `often' can be attributed to component parts of the hose manufactured by some other entity." Waxman, 132 Wash.App. at 146, 130 P.3d 874. Waxman further contended that it did not manufacture the allegedly defective water supply line. Waxman, 132 Wash.App. at 146, 130 P.3d 874.
¶ 27 We held that Waxman's evidence was insufficient to support a meritorious defense as required for vacation of a default judgment. Waxman, 132 Wash.App. at 145, 130 P.3d 874. Given that a product seller that brands a product under its trade name is subject to the liability of the manufacturer pursuant to RCW 7.72.040(2)(e), we concluded that "[t]he materials submitted by Waxman do not explain how Waxman could avoid a finding of liability simply by proving that some other entity actually manufactured the supply line." Waxman, 132 Wash.App. at 147, 130 P.3d 874. Furthermore, we determined that "whatever right of indemnity and contribution Waxman may be able to establish against other entities is not a defense to Waxman's own liability." Waxman, 132 Wash.App. at 148, 130 P.3d 874. The principles we set forth in Waxman support the conclusion that REI may not seek to allocate fault to Aprebic, the manufacturer, where it assumed the liability of the manufacturer.
¶ 28 RCW 7.72.040(2)(e) creates a statutory form of vicarious liability whereby the seller of a branded product assumes the liability of the manufacturer. Because permitting such a product seller to seek to allocate fault to the actual manufacturer pursuant to *26 comparative fault principles would undermine our legislature's intent in enacting this statutory provision, the trial court did not err by concluding that REI could not seek to allocate fault to Aprebic.

III
¶ 29 REI next contends that the trial court erred by concluding that REI is strictly liable for Johnson's injuries. Specifically, REI asserts that the trial court erred by resolving issues of material fact in favor of Johnson and by finding that the alleged manufacturing defects were the cause of her injuries. We disagree.
¶ 30 "In reviewing a summary judgment order, the appellate court evaluates the matter de novo, performing the same inquiry as the trial court." Snohomish County v. Rugg, 115 Wash.App. 218, 224, 61 P.3d 1184 (2002). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). The moving party bears the burden of demonstrating that there is no genuine issue as to any material fact. Lamon v. McDonnell Douglas Corp., 91 Wash.2d 345, 349, 588 P.2d 1346 (1979). All reasonable inferences must be considered in the light most favorable to the nonmoving party, and summary judgment may be granted only if a reasonable person could reach but one conclusion. Rugg, 115 Wash.App. at 224, 61 P.3d 1184.
¶ 31 A material fact "`is a fact upon which the outcome of the litigation depends, in whole or in part.'" Lamon, 91 Wash.2d at 349, 588 P.2d 1346 (quoting Morris v. McNicol, 83 Wash.2d 491, 494-95, 519 P.2d 7 (1974)). An affidavit submitted in support of or in response to a motion for summary judgment "does not raise a genuine issue of fact unless it sets forth facts evidentiary in nature, i.e., information as to what took place, an act, an incident, a reality as distinguished from supposition or opinion." Rugg, 115 Wash.App. at 224, 61 P.3d 1184. "[U]ltimate facts, conclusions of fact, conclusory statements of fact or legal conclusions are insufficient to raise a question of fact." Rugg, 115 Wash.App. at 224, 61 P.3d 1184.
¶ 32 The WPLA provides that "[a] product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction." RCW 7.72.030(2).
A product is not reasonably safe in construction if, when the product left the control of the manufacturer, the product deviated in some material way from the design specifications or performance standards of the manufacturer, or deviated in some material way from otherwise identical units of the same product line.
RCW 7.72.030(2)(a).
¶ 33 REI first contends that, because the statutory definition of a manufacturing defect requires that the product deviate from the manufacturer's design specifications or performance standards, Johnson cannot prove that the bicycle's fork contained a manufacturing defect without submitting to the court direct evidence of Aprebic's design specifications or performance standards. REI asserts that "there is no evidence in the record to establish that the fork at issue deviated from Aprebic's design standards." Br. of Pet'r at 34. To the contrary, Johnson submitted to the trial court evidencein the form of Zaminski's declarationthat the fork fractured due to insufficient carbon fiber layering. This evidence itself supports the conclusion that the fork "deviated in some material way from the design specifications or performance standards of the manufacturer," RCW 7.72.030(2)(a), as no conceivable performance standard would call for the manufacture of a carbon fiber fork that fractures as Johnson's did. Although on summary judgment all reasonable inferences must be drawn in favor of the nonmoving party, Rugg, 115 Wash.App. at 224, 61 P.3d 1184, no reasonable inference can be drawn that a carbon fiber fork that fractures in this way performed in accordance with any manufacturer's performance standards.[6]
*27 ¶ 34 REI next contends that genuine issues of material fact regarding causation remain, thus precluding summary judgment. However, despite REI's assertion that the bicycle displayed "substantial wear and tear," REI does not establish how the fact that the bicycle was a "high mileage vehicle" explains the fracture of the carbon fiber fork. See CP at 176. Thus, the alleged "wear and tear" on the bicycle is not a "`fact upon which the outcome of the litigation depends.'" See Lamon, 91 Wash.2d at 349, 588 P.2d 1346 (quoting Morris, 83 Wash.2d at 494-95, 519 P.2d 7).
¶ 35 REI further speculates that the 2006 collision, which resulted in damage to the back tire of the bicycle, may have been a contributing cause of the fracture of the fork. However, REI's evidence does not explain how that collision could have contributed to the fracture. Moreover, REI's evidence refutes neither Johnson's expert's assertion that the insufficient carbon fiber layering is a defect that can occur only during manufacture nor the same expert's conclusion that this particular defect caused the fork to fracture. Rather, REI conjectures that "[i]f an element of that crash involved the front fork without creating visible damage, then it could be considered an initiating event for the fracture that serves as the basis for this law suit." CP at 178. REI cannot rely on speculation and conjecture to raise a genuine issue of material fact. See Rugg, 115 Wash. App. at 224, 61 P.3d 1184.
¶ 36 The trial court did not erroneously resolve issues of material fact in favor of Johnson. To the contrary, its grant of summary judgment was appropriate because REI failed to raise any genuine issue of material fact as to its liability for Johnson's injuries.

IV
¶ 37 Finally, REI contends that the trial court erred by ruling that any claim brought by REI against Aprebic would be bifurcated for trial from Johnson's claim. We disagree.
¶ 38 A trial court's decision to order separate trials is reviewed for an abuse of discretion. Maki v. Aluminum Bldg. Prods., 73 Wash.2d 23, 25, 436 P.2d 186 (1968) ("The right to order separate trials is a matter of discretion vested in the trial court by the rules."). Civil Rule 20(b) permits the trial court to order separate trials to prevent delay or prejudice where a party would be delayed or "put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him." Here, the trial court acted well within its discretion in finding that permitting REI to join Aprebic as a third party defendant would delay and prejudice the adjudication of Johnson's claim and, thus, ruling that any claim brought by REI against Aprebic should be bifurcated for trial.
¶ 39 Notwithstanding that the trial court acted within its discretion pursuant to CR 20(b), REI contends that the trial court's bifurcation ruling was erroneous because the court "appeared to be unaware of the impact such bifurcation would have on the viability of REI's contribution claim." Br. of Pet'r at 41-42. REI and Aprebic cannot be jointly and severally liable for Johnson's injuries, as required to establish a statutory right to contribution, unless a judgment is entered against both parties in Johnson's suit. See RCW 4.22.040 (noting that a right to contribution exists where the parties are jointly and severally liable); RCW 4.22.070(1)(b) (providing that only those defendants against whom judgment is entered may be jointly and severally liable for the claimant's injuries). Thus, REI contends that the trial court abused its discretion by misapplying the law in issuing a ruling that would compromise REI's right to seek contribution from Aprebic.
¶ 40 However, notwithstanding that REI may be precluded from seeking statutory contribution from Aprebic, the trial court did not abuse its discretion by misapplying the *28 law. Indeed, this is not the first time that a court has upheld a proper application of the law despite negative consequences for a party's contribution rights. In Kottler v. State, 136 Wash.2d 437, 439, 963 P.2d 834 (1998), our Supreme Court held that a settling party in a civil tort action is not entitled to seek contribution from another alleged tortfeasor where joint and several liability did not arise pursuant to the exceptions set forth in RCW 4.22.070. Because no judgment had been entered against the settling defendant, and, thus, joint and several liability did not arise, RCW 4.22.040 precluded the settling party from seeking contribution. See Kottler, 136 Wash.2d at 439, 963 P.2d 834; RCW 4.22.040 ("A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury.").
¶ 41 Justice Talmadge wrote separately "to urge legislative attention toward the anomalous result this case requires." Kottler, 136 Wash.2d at 450, 963 P.2d 834 (Talmadge, J., concurring). Although he "agree[d] with the majority's resolution because the statutory language and our case law compel its result," Kottler, 136 Wash.2d at 450, 963 P.2d 834, Justice Talmadge remarked that it appeared that proper application of the 1981 and 1986 tort reform acts effected a result that contradicted the legislature's intent in enacting those very statutes. Kottler, 136 Wash.2d at 450, 963 P.2d 834. Thus, "[t]o more effectively execute [the legislature's] intent," Justice Talmadge implored the legislature to "address[] and correct[] this unfortunate situation in the tort law." Kottler, 136 Wash.2d at 453, 963 P.2d 834. Notwithstanding Justice Talmadge's appeal to the legislature, it has amended neither the 1981 nor the 1986 act to address this "anomalous result."
¶ 42 Here, as in Kottler, a result dictated by proper application of the law leads to an "anomalous result" in that REI's contribution rights are compromised. Here, also as in Kottler, the existence of such an anomaly suggests neither a misunderstanding nor a misapplication of the law. Rather, the trial court here properly understood and applied the law, notwithstanding that REI's right to seek contribution may have been thereby compromised.
¶ 43 The trial court did not abuse its discretion by ruling that any claim by REI against Aprebic would be bifurcated for trial from Johnson's claim.[7]
¶ 44 Affirmed.
We concur: SPEARMAN and GROSSE, JJ.
NOTES
[1] The trial court noted that its ruling would not "preclude REI from asserting that [Johnson] was contributorily negligent if any facts to support this are developed." CP at 196.
[2] RCW 7.72.030(2) provides, in pertinent part:

(2) A product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW.
(a) A product is not reasonably safe in construction if, when the product left the control of the manufacturer, the product deviated in some material way from the design specifications or performance standards of the manufacturer, or deviated in some material way from otherwise identical units of the same product line.
[3] The limited circumstances in which a product seller assumes the liability of a manufacturer are set forth in RCW 7.70.040(2), which provides:

(2) A product seller, other than a manufacturer, shall have the liability of a manufacturer to the claimant if:
(a) No solvent manufacturer who would be liable to the claimant is subject to service of process under the laws of the claimant's domicile or the state of Washington; or
(b) The court determines that it is highly probable that the claimant would be unable to enforce a judgment against any manufacturer; or
(c) The product seller is a controlled subsidiary of a manufacturer, or the manufacturer is a controlled subsidiary of the product seller; or
(d) The product seller provided the plans or specifications for the manufacture or preparation of the product and such plans or specifications were a proximate cause of the defect in the product; or
(e) The product was marketed under a trade name or brand name of the product seller.
[4] The legislative history of the WPLA includes a statement that where the nonmanufacturing product seller "adopts the product as its own, [it] has, in a sense, waived [its] right to immunity and should be subject[ed] to a manufacturer's liability." SENATE JOURNAL, 47th Leg., Reg. Sess., at 625 (Wash. 1981).
[5] Similarly, the decision in Lundberg v. All-Pure Chemical Co., 55 Wash.App. 181, 777 P.2d 15 (1989), does not apply here. The court therein determined that the jury could be instructed on the plaintiff's alleged comparative negligence in a product liability action, notwithstanding that the plaintiff's claim alleged strict liability. Lundberg, 55 Wash.App. at 186-87, 777 P.2d 15. Finding that the legislature intended the comparative fault doctrine to apply to all actions based on fault, including strict liability and product liability claims, the court held that there is "no reason to distinguish between negligence and strict liability actions for purposes of instructing a jury on the plaintiff's comparative fault." Lundberg, 55 Wash.App. at 186, 777 P.2d 15. Johnson's comparative fault is not at issue. Rather, the issue here is whether fault can be attributed to another entity where that entity is liable on the same basis and based on the same facts as is the defendant seeking to attribute fault and where permitting the defendant to attribute fault would contravene the purpose of the relevant statute.
[6] Moreover, the purpose of holding sellers of branded products vicariously liable for manufacturing defects would be undermined were we to require the claimant to conduct discovery from the manufacturer itself, particularly where the manufacturer is not a party to the action. Where such evidence is not necessary to demonstrate that the product was, indeed, defective, the trial court did not err by not requiring Johnson to produce direct evidence of Aprebic's performance standards.
[7] REI additionally contends that the trial court erred by denying REI's request to conduct additional discovery prior to the summary judgment ruling. Because discretionary review was not granted on this issue, we will not reach it. City of Bothell v. Barnhart, 156 Wash.App. 531, 538 n. 2, 234 P.3d 264 (2010) (noting that, pursuant to RAP 2.3(e), the appellate court may specify the issue or issues as to which discretionary review is granted), review granted, No. 84907-2, 170 Wash.2d 1005, 245 P.3d 226 (Wash. Nov. 3, 2010).