# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| SYBIL COYNE, individually and as Personal Representative of the Estate of PATRICK COYNE, deceased; | No. 57409-8-II |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| CHIN 2 CORP., a for profit Washington corporation (d/b/a C&C SPEEDY MART); JSC USA, LLC, a for profit Oregon limited liability company (d/b/a PDX FOOD MART), | |
| Respondents, | |
| WENDIANNE ROOK and JEFF ROOK, husband and wife; SOCIETY BOTANICALS, LLC, a for profit Oregon limited liability company (d/b/a KRATOM DIVINE); CHOL SUNG PAK, an individual; BLUE TREE CANDY LLC (d/b/a BLUE TREE WHOLESALE) a for profit Oregon limited liability company; GAIA ETHNOBOTANICAL LLC, a for profit Nevada limited liability company; YOUNG'S J.K., INC., a for profit Oregon corporation; and JOHN & JANE DOES I THROUGH 4, | |
| Defendants. | |

CHE, J. — In 2021, following her husband's death, Sybil Coyne, acting individually and as the personal representative of Patrick Coyne's estate (collectively Estate), brought suit against several defendants including Society Botanicals (Society), Chin 2 Corp (C2C), and JSC USA (JSC). The Estate argued that Patrick died as a result of using Kratom Divine and that the

product was manufactured, distributed, and sold by Society. The Estate further alleged that under the Washington Product Liability Act (WPLA), Society, C2C, and JSC were all jointly and severally liable as manufacturers and/or product sellers. The trial court granted C2C's motion for summary judgment, dismissing the Estate's "claims of imputed manufacturer liability against" C2C. The trial court then entered final judgment under CR 54(b), dismissing C2C and JSC. The Estate appeals.

We hold that Society held itself out as a manufacturer under RCW 7.72.010(2); however, C2C and JSC have failed to meet their burden in establishing that they are entitled to judgment as a matter of law concerning their liability under RCW 7.72.040(2)(a) and (b). Accordingly, we reverse and remand.

FACTS

I. BACKGROUND

A. *Kratom*

Kratom, is an unregulated substance that is derived from the Mitragyna Speciosa tree that is native to Southeast Asia. Although not FDA approved for human consumption, product sellers have advertised kratom "as a safe legal substance available as an alternative to other opioids." Clerk's Papers (CP) at 380. Research is limited concerning "the relative safety of Kratom for the treatment of chronic pain or opioid dependence." CP at 380.

B. *Chain of Distribution*

Society "is an Oregon-based limited liability company doing business as Kratom Divine." CP at 2. Jeff and Wendianne Rook are husband and wife and Wendianne[1] is a principal of

---

[1] This opinion refers to the parties by their first names to promote clarity where the parties are married and share a last name.

Kratom Divine. Society receives kratom powder in bulk from various suppliers, including another defendant, Gaia. After receiving the powder, Society tests smaller batches of the product to ensure "consumers get a safe, clean, and pure product." CP at 131. Society views its testing efforts as an opportunity to "show the consuming public that [it is] a clean, good, manufacturer." CP at 132.

Society tests its kratom powder for heavy metals, "harmful microbes," and mitragyna percentage. CP at 125. Society then repackages the powder, "without any alteration,"[2] "into bags or capsules" under its brand Kratom Divine. CP at 119, 129. Wendianne designs the product labels and marketing materials for Kratom Divine. The Kratom Divine label characterizes the product as "pure."[3] CP at 137. Certain labels[4] list a serving size and statements that the product has "been lab tested for quality and purity" but "has not been evaluated by the FDA and is not intended to treat, prevent, cure or diagnose any illness." CP at 137, 311. The label further directs consumers to Society's web address where they can do research if they are concerned about the product. Society's website includes information about Kratom Divine's safety, purchasing options, testing measures, and "facts" about kratom, generally.

Society sells its product online and directly to consumers and stores. Society also provides its product to its sole distributer, Young's J.K.'s (Young's). Young's distributes Kratom Divine to its own distributor, Blue Tree Candy (Blue Tree). Blue Tree then distributes

---

[2] Wendianne explained that Society does mix powders together for its "Sama product." CP at 120.

[3] Wendianne explained that "pure" means the product "is pure raw Kratom powder," without any added sugars or salt. The use of "pure" does not mean the product is free of heavy metals. CP at 130.

[4] Depending on the Kratom Divine product, some labels include more information than others.

Kratom Divine to two retail locations in Oregon and Washington: PDX Food Mart (JSC) and C&C Speedy Mart (C2C). JSC and C2C stocked Kratom Divine for sale in glass display cases on their counters. C2C does not make, manufacture, assemble, market, test, or create warnings or warranties concerning the Kratom Divine products it sells. Nor does C2C "add its name to any of the Kratom Divine products that it sells." CP at 116.

C.      *Patrick Coyne's Purchase and Use of Kratom Divine*

Patrick "suffered from chronic pain, particularly back pain." CP at 12. About two years before his death, Patrick began taking Kratom Divine to alleviate his chronic pain. Patrick purchased Kratom Divine at C&C Speedy Mart and PDX Food Mart. Patrick's dependence on Kratom Divine caused him to increase his usage to "several times a day, at work and at home." CP at 13.

In June 2020, Sybil found Patrick unconscious in the family's living room recliner. Sybil called 911, and after repeated attempts to resuscitate Patrick, he was pronounced dead. A bag of Kratom Divine was found near Patrick's body. The Cowlitz County coroner determined that Patrick's cause of death was the "Toxic Effects of Mitragynin (Kratom)." CP at 13.

II.  PROCEDURAL HISTORY

In May 2021, Sybil, acting individually and as the personal representative of Patrick Coyne's estate brought suit against several defendants including Society, C2C, and JSC. In its complaint, the Estate alleged that Patrick "suffered an untimely death as a direct and proximate result of the product that was manufactured, marketed, distributed and sold by Kratom Divine." CP at 14. The Estate alleged that the defendants "were all manufacturers and/or product sellers of kratom under [RCW 7.72], and are jointly and severally liable for the damages caused to the

Estate." CP at 14. The Estate raised six arguments under the WPLA and the Consumer Protection Act (CPA). The Estate sought an award of general, special, and punitive damages.

In March 2022, C2C moved for summary judgment. C2C argued, in pertinent part, that "there is no evidence that the exceptions in RCW 7.72.040(2) for imputing manufacturer liability to a product seller apply to [C2C]." CP at 186. C2C explained that "[t]here is no reason to believe that [the Estate] will be unable to enforce a judgment against Society in the unlikely event [its] claims against Society are successful." CP at 199. C2C relied on Wendianne's declaration which stated that "Society is a legal, viable, and profitable company." CP at 25. Wendianne's declaration further acknowledged that despite her "extensive efforts" Society "has been unable to locate an insurance company who is willing to offer liability insurance to Society Botanicals." CP at 25.

In response to C2C's motion for summary judgment, the Estate argued that "as a 'product seller', [C2C] failed to address RCW 7.72.040(2)(a) and (b), under which it retains the strict liability of a manufacturer to the extent that there are no kratom powder manufacturers subject to suit or collection within the United States." CP at 207. The Estate explained that although Society

> has 'the liability of a manufacturer' based on its packaging and marketing of the Kratom Divine product (RCW 7.72.040(2)(e)), that does not make Society the 'manufacturer' of kratom divine powder for purposes of RCW 7.72.040(2)(a), and does not establish its solvency for the damages of a wrongful death case. Even if it did, [C2C] has not provided law or analysis to escape its statutory liability as a manufacturer under RCW 7.72.040(2)(a) and (b).

CP at 220.

In its reply in support of its motion for summary judgment, C2C argued that

5

[t]he Estate failed to come forward with any evidence from which [the trial court] could determine that it is probable, much less highly probable, that the Estate would be unable to enforce a judgment against Society, either as a manufacturer under RCW 7.72.010(2) and RCW 7.72.030, or for the same liability as the actual manufacturer under RCW 7.72.040(2)(e) and 7.72.030.

CP at 486.

In July 2022, the trial court granted C2C's motion for summary judgment, dismissing the Estate's claims against C2C. In ruling on the Estate's WPLA claim under RCW 7.72.040(2), the trial court found as a matter of law that Society is a manufacturer of the Kratom Divine products and that Society is solvent. Therefore, the trial court ruled, as a matter of law that C2C "did not violate the Washington Product Liability Act." CP at 673.

The Estate moved for reconsideration of the trial court's summary judgment order. Specifically, the Estate sought "reconsideration of the court's ruling that Society Botanicals is a 'manufacturer' of the imported kratom powder for purposes of RCW 7.72.010(2)." CP at 580. Among the issues for reconsideration was "[w]hether the manufacturer liability can be imputed to [C2C] under RCW 7.72.040(2)." CP at 677. In denying the Estate's motion for reconsideration, the trial court recognized that there was "no challenge to the Court's finding that Society, for purposes of RCW 7.72.040 is both a manufacturer and is solvent." CP at 678. The trial court explained that

The undisputed facts are: Society receives, tests, and repackages the Kratom into packages it designs and produces. Further, even if it were not considered the primary manufacturer it is a manufacturer, as it has the liability of a manufacturer under RCW 7.72.040.

The statute is not ambiguous. If there is a solvent upstream manufacturer, and the defendant [C2C] has not performed acts that bring it independently into the definition of manufacturer, they are not a manufacturer for purposes of RCW 7.72.

CP at 678-79.

6

The parties stipulated "to an order granting JSC's request for summary judgment dismissal." CP at 682. In October 2022, the trial court granted the Estate's motion to certify its decision dismissing the imputed manufacturer liability claims against C2C and JSC, and pursuant to CR 54(b), the court entered final judgment dismissing with prejudice the Estate's "claims of imputed manufacturer liability against" C2C and JSC. CP at 688.

The Estate appeals.[5]

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate only where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." CR 56(c); *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 408, 282 P.3d 1069 (2012). There is a genuine issue of material fact where "'the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Am. Fam. Mut. Ins. Co. v. Wood Stoves Etc., Inc.*, 24 Wn. App. 2d 26, 30, 518 P.3d 666 (2022). The party moving for summary judgment has the initial burden of showing there is no dispute as to any issue of material fact. *Johnson v. Recreational Equip., Inc.*, 159 Wn. App. 939, 954, 247 P.3d 18 (2011). "Once the moving party has met its burden, the burden shifts to the nonmoving party to present admissible evidence demonstrating the existence of a genuine issue of material fact." *Indoor Billboard/Wash., Inc. v. Integra*

---

[5] On appeal, JSC filed a joinder brief, arguing that the "legal arguments made by [C2C] equally apply to JSC." Joinder Br. of Resp't JSC at 1. This opinion acknowledges the joinder and incorporates JSC when referring to C2C.

*Telecom of Wash. Inc.*, 162 Wn.2d 59, 70, 170 P.3d 10 (2007) (internal quotations omitted). "If the nonmoving party cannot meet that burden, summary judgment is appropriate." *Id.*

We review an order granting summary judgment de novo and engage in the same inquiry as the trial court. *O'Connell v. MacNeil Wash Sys. Ltd.*, 2 Wn. App. 2d 238, 245, 409 P.3d 1107 (2017). Accordingly, we review "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from the evidence in that party's favor." *Id.*

## II. LEGAL PRINCIPLES

In Washington, products liability claims are governed by the WPLA. "The WPLA distinguishes between and imposes different standards of liability on manufacturers and product sellers for harm caused by defective products." *Johnson*, 159 Wn. App. at 946.

The WPLA defines "manufacturer" as including "a product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product or component part of a product before its sale to a user or consumer." RCW 7.72.010(2). "The term [manufacturer] also includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer." RCW 7.72.010(2). Generally, "manufacturers of defective products are held to a higher standard of liability, including strict liability where injury is caused by a manufacturing defect or a breach of warranty." *Johnson*, 159 Wn. App. at 946; RCW 7.72.030(2).

Unlike manufacturers, "product sellers are ordinarily liable only for negligence, breach of express warranty, or intentional misrepresentation" and those claims may proceed even if there is an upstream manufacturer. *Id.*, 159 Wn. App. at 946-47. The WPLA defines "product seller" as "any person or entity that is engaged in the business of selling products, whether the sale is for

resale, or for use, or consumption. The term includes a manufacturer, wholesaler, distributor, or retailer of the relevant product. RCW 7.72.010(1).

Under RCW 7.72.040(2), a manufacturer's liability to a claimant may be imputed to a product seller under five circumstances. Pertinently, a "product seller, other than a manufacturer, shall have the liability of a manufacturer" where "[n]o solvent manufacturer who would be liable to the claimant is subject to service of process" or where the trial court "determines that it is highly probable that the claimant would be unable to enforce a judgment against any manufacturer. RCW 7.72.040(2)(a),(b). By narrowing the liability for product sellers, RCW 7.72.040(2) "reflects the legislature's goal of 'avoid[ing] the imposition of liability on nonmanufacturer sellers of products (retailers) based solely on their participation in the chain of distribution.'" *Am. Fam. Mut.*, 24 Wn. App. 2d at 29 (quoting 16A DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 17:1 (5th ed. 2021)).

Within the context of a products liability claim, the claimant bears the burden of establishing the statutory elements set out in RCW 7.72.040(2). *Id.* at 30.

Where a term is not statutorily defined, we "may look to common law or a dictionary for the definition." *McKenna v. Harrison Memorial Hosp.*, 92 Wn. App. 119, 122, 960 P.2d 486 (1998) (citing *State v. Pachero*, 125 Wn.2d 150, 154, 882 P.2d 183 (1994)). The WPLA does not define "solvent"; however, Merriam Webster defines the term as "able or sufficient to pay all legal debts." MERRIAM-WEBSTER'S THIRD NEW INT'L DICTIONARY at 2171 (2002).

III. MANUFACTURER: RCW 7.72.010(2)

The Estate argues that "Society's re-packaging of previously manufactured kratom did not make Society a 'manufacturer' of that kratom" under RCW 7.72.010(2). Br. of Appellant at 11. We disagree.

Here, C2C met its initial burden to show an absence of a genuine issue of material fact as to whether Society held itself out as a manufacturer under RCW 7.72.010(2). The record before this court demonstrates that after receiving the bulk kratom powder, Society tests smaller batches of the product for heavy metals, "harmful microbes," and mitragyna percentage to ensure "consumers get a safe, clean, and pure product." CP at 125, 131. During her deposition, Wendianne explained that Society views its testing efforts as an opportunity to "show the consuming public that [Society is] a clean, good, manufacturer." CP at 132.

Furthermore, the parties do not dispute that Society designed its Kratom Divine packaging, labels, and "rack" materials. CP at 138. In designing its product labels, Society lists a serving size and statements that the product has "been lab tested for quality and purity" but "has not been evaluated by the FDA and is not intended to treat, prevent, cure or diagnose any illness." CP at 137, 311. Society's packaging also explicitly lists Society as Kratom Divine's manufacturer and distributor.

After C2C met its initial burden, the burden shifted to the Estate to present admissible evidence demonstrating the existence of a genuine issue of material fact on this question. Although the Estate argues that there are factual questions about whether Society held itself out as a manufacturer, the Estate has failed to present any evidence found in our record creating a

genuine issue of material fact as to whether Society holds itself out as a manufacturer.[6]

Accordingly, summary judgment is appropriate on the issue of whether Society is a manufacturer

under RCW 7.72.010(2).

IV.  IMPUTED MANUFACTURER LIABILITY: RCW 7.72.040(2)(a) & (b)

The Estate argues that the imputation of manufacturer liability to C2C and JSC under

RCW 7.72.040(2)(a)(b) is not meaningless because liability is also imputed to Society under

RCW 7.72.040(2)(e).[7]

C2C argues that "[t]here is insufficient record evidence to support [C2C's] liability under

RCW 7.72.040(2)(a) or (b)."  Br. of Resp't at 15.  C2C contends that because the trial court

found that Society is a manufacturer under RCW 7.72.010(2), "the trial court correctly held that

C2C could not have the liability of a manufacturer under RCW 7.72.040(2)(a) or (b).  We agree

that the record evidence is insufficient as to entitle C2C to summary judgment as a matter of law.

First, under RCW 7.72.040(2)(a), C2C failed to prove the existence of a solvent

manufacturer who is subject to service of process.  RCW 7.72.040(2)(a).  On the issue of

solvency, C2C introduced Wendianne's declaration that "Society is a viable, profitable

company."  CP at 199.  The Estate did not introduce any competing evidence challenging the

---

[6] In its briefing, the Estate cites to information allegedly found on Society's website that it contends creates a question of fact on whether Society holds itself out as a manufacturer.  We note that neither website pages, nor the information they contain have been made part of our appellate record.

[7] The Estate further contends that Society repackaging the Indonesian kratom with a Kratom Divine sticker does not destroy the Estate's right to impute manufacturer liability to C2C and JSC under RCW 7.72.040(2)(a) and (b).  However, having determined that Society holds itself out as a manufacturer under RCW 7.72.010(2), we decline to reach this argument concerning Society's potential imputed liability under RCW 7.72.040(2)(e).

declaration. But when taking all inferences in the light most favorable to the Estate, Wendianne's declaration that Society is "viable" and "profitable" does not establish that Society is able to pay all legal debts, including any judgment from a successful wrongful death claim. The record before this court does not support a finding of solvency concerning Society.

Next, under RCW 7.72.040(2)(b), C2C was required to provide sufficient evidence such that the trial court could determine that it is highly probable that the Estate would be able to enforce a judgment against any manufacturer. C2C offered Wendianne's declaration that "Society is a viable, profitable company" and emphasized Society's active participation in the litigation to support their proposition that there was "no reason to believe that [the Estate] will be unable to enforce a judgment against Society." CP at 199. The Estate did not introduce any competing evidence challenging the declaration.

Despite that, Wendianne's declaration that Society is a viable, profitable company is insufficient to establish with a high probability that the Estate would be able to enforce a *judgment* against any manufacturer, specifically Society, especially given that Wendianne's declaration also included a statement that Society does not have liability insurance. "Profitable" is a vague term that could mean Society avoids operating at a deficit based on a $1 profit. Alternatively, the term could also mean that Society's profits are in the millions annually. Evidence that Society is viable, profitable, *and uninsured* is not sufficient to establish a high probability that the Estate, if successful, would be able to enforce a damage award against Society on a wrongful death claim. Under CR 56, C2C has not established that they are entitled to judgment as a matter of law on this issue.

12

No. 57409-8-II

Accordingly, we conclude that the Estate's imputed liability claims under RCW 7.72.040(2)(a) and (b) were improperly dismissed.

CONCLUSION

We hold that although Society held itself out as a manufacturer under RCW 7.72.010(2), C2C and JSC have failed to meet their burden in establishing that they are entitled to judgment as a matter of law concerning their liability under RCW 7.72.040(2)(a) and (b). Accordingly, we reverse the trial court's summary judgment dismissal of the Estate's WPLA claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

e, P.J.

Price, J.

13