[No. 49522-4-I.  Division One.  December 9, 2002.]

SNOHOMISH COUNTY, *Respondent*, v. BRUCE RUGG, ET AL.,
*Appellants*.

*Scott M. Missall* and *Maureen L. Mitchell* (of *Short, Cressman & Burgess, P.L.L.C.*), for appellants.

*Janis E. Ellis, Prosecuting Attorney*, and *Karen M. Jorgensen, Deputy*, for respondent.

KENNEDY, J. — Snohomish County brought suit to enforce its notice and order charging Mr. and Mrs. Bruce Rugg with illegal storage and/or basing of commercial vehicles on their residentially zoned property and illegal grading without a permit. The trial court granted summary judgment to Snohomish County against the Ruggs, concluding that "there is only one result you could reach from this." We agree, and affirm the order granting summary judgment to the county.

## FACTS

The Ruggs own a five-acre parcel located at the end of a dead-end gravel road, in an area of Snohomish that is zoned

"Rural-5 Acre." Snohomish County Code (SCC) 18.12.030-(3)(b). Snohomish County's zoning code does not allow commercial activities in rural-five acre zones. SCC 18.14.030; *see also* SCC 18.32.040 (zoning matrix). Moreover, grading in wetland areas requires a permit. SCC 17.05.110.

The Ruggs purchased the property in 1997. They have not obtained a building permit for a residence, but have made various improvements on the property with, they allege, the intention of building a permanent residence eventually. The improvements to the date of summary judgment consisted of a large metal storage/shop building, an access road to the back part of the property that includes a culvert to cross a creek that bisects the property, power, water, and telephone utility connections, a septic drainfield, and a temporary mobile home. In addition, the Ruggs cleared considerable brush and trees.[1] The Ruggs claim that pending the construction of a residence, they used the property only for recreational purposes, as a retreat for friends and family, to work on family-owned cars in the workshop, and for woodworking, construction planning, and other tasks related to the eventual residential development of the property.

The Ruggs own a construction company, BLR Development, Inc., through which they have access to a wide variety of large commercial equipment and vehicles, as well as to construction workers employed by the company. Snohomish County contends that the Ruggs illegally based their construction business on the property and/or used it to store construction materials, vehicles, and equipment, in violation of the county's zoning code. The Ruggs allege that the BLR vehicles, employees, and equipment that the neighbors reported to the county were on the property only for the purpose of performing personal construction ser-

---

[1] The Ruggs removed more than half the trees from their property without approval from the state Department of Natural Resources as is required by the Forest Practices Act of 1974, chapter 76.09 RCW.

vices for the Ruggs, in preparation for the residence that will eventually be built there.

On three occasions in the fall of 1999, after receiving numerous complaints from neighbors, a county code-enforcement officer visited the Ruggs' property and saw BLR vehicles, heavy equipment, and construction materials being stored on the property.

The officer also saw that grading had been done for which no permit had been issued. As a result, on December 14, 1999, the officer issued a notice and order to Bruce and "Jane Doe" Rugg for violation of Snohomish County Code provisions prohibiting "storage and/or basing of commercial vehicles, equipment and materials in an area not zoned for this type of activity," and for "[a]llowing grading activity to occur without first obtaining the necessary permit(s) . . . ." Clerk's Papers at 252; Ex. A. The notice and order informed the Ruggs of the zoning and grading violations and ordered: (1) immediate termination of the illegal activities, (2) removal of all commercial vehicles, equipment, and materials by January 13, 2000, and (3) receipt of a valid grading permit by April 11, 2000. The notice and order also informed the Ruggs that failure to comply would result in civil penalties of $100 per day per violation, until the violations were corrected. Last, the notice and order contained instructions on how the Ruggs could appeal the notice and order, and their deadline for doing so.

The Ruggs contend that they decided, rather than to contest the notice and order, to simply comply with its directives. Thus, they did not appeal the notice and order and, as a result, the order became final on December 28, 1999. The county contends that the Ruggs simply ignored the notice and order and continued the violations unabated. For example, the Ruggs did not apply for a grading permit until July 11, 2000, three months past the compliance deadline contained in the notice and order. As they had been warned in the notice and order might be the case, the permit application required environmental review as well as provisions to remedy the damage to the environment

caused by the unpermitted grading. Moreover, the neighbors continued to call the county on a frequent basis, reporting that the commercial activity on the property continued unabated.

On April 24, 2000, the county filed the instant lawsuit, alleging that the Ruggs had failed to comply with the order. On May 23, 2001, the county filed a summary judgment motion seeking a ruling that violations had occurred, enjoining the Ruggs from continuing violations, and requesting civil penalties. The county contended that the Ruggs had accrued $97,400 in civil penalties for failing to meet the compliance deadlines in the notice and order ($53,100 for the zoning violations and $44,300 for the unpermitted grading). But the county requested a penalty of only $20,000, without apportionment between the grading and zoning violations, in settlement of the civil penalties.

On June 28, 2001, the trial court heard the summary judgment motions. In its motion, the county relied upon the factual statements contained in the affidavits of two county code-enforcement officers and several of the Ruggs' neighbors. Three of the neighbors provided detailed logs enumerating the moving of heavy commercial vehicles to and from the property, including heavy equipment that was driven onto the property late at night, left there overnight, and driven out again the following morning.[2] One of the county code-enforcement officers recounted a previous contact with

---

[2] One neighbor, Karl Gauglitz, recorded seven single-spaced pages of entries describing numerous trips by BLR vehicles and heavy equipment to and from the property, spanning from January 13, 2000 (the deadline for removing commercial vehicles, equipment, and materials from the property) to May 4, 2001. On February 7, 2000, nearly a month after the compliance deadline for cessation of commercial use of the property, Gauglitz photographed BLR vehicles that were being kept on the property. Another neighbor, Scott Hawkins, recorded 19 single-spaced pages of entries documenting literally hundreds of instances of BLR commercial vehicles and equipment going to and coming from the property. All but a few of these log entries were for activity after the compliance deadline, and continuing through May 1, 2001. A third neighbor, Roger Rettig, recorded two single-spaced pages logging BLR commercial activities, one page of which was devoted to activity after the compliance deadline. According to Mr. Rettig, on October 18, 2000, a man pulled his vehicle alongside Mr. Rettig and asked where the BLR business office was. The man said he wanted to pick up his paycheck. The neighbors' declarations and logs show that BLR employees driving pickups marked with the BLR logo would arrive on the property early in the morning.

the Ruggs in which they were required to cease basing their construction business at their residence in Bothell, some 15 miles away from the property. The Ruggs did move their business base of operations from the Bothell residence. The county contends that they simply moved it from its previous illegal location in Bothell to another illegal location, that being their property in rural Snohomish County that is the subject of the current enforcement proceeding.

In response to the county's motion, and in support of their contention that they had complied with the notice and order by abating the violations, the Ruggs provided copies of permits issued by the county for construction of a septic drainfield, a culvert, and placement of a mobile home on their property, as well as affidavits from their family members and BLR employees stating that all their visits to the property were for purposes of personal construction, mandated grading violation reparation activities, recreation, or other personal use. The Ruggs did not contest the accuracy of the logs kept by the neighbors, however, and although they denied that they based their business on the property, they failed to explain where they in fact based their business, after moving it from their residential property in Bothell, if not at their property in rural Snohomish County.

On July 5, 2001, the trial court granted the county's summary judgment motion, concluding that there were no genuine issues of material fact as to the past and continuing violations, awarding $20,000 as settlement of the penalties for violations beyond the compliance deadlines, enjoining the Ruggs from continuing violations, and ordering abatement of the illegal grading. The court denied the county's request for a declaration of nuisance, however. At

---

Heavy equipment would then be driven away from the property. At times, varying from late afternoon to late at night, the heavy equipment would be driven back onto the property and left there overnight. A pickup with the BLR logo would then drive away. This pattern was repeated over and over again, from before the notice and order were issued until the county moved for summary judgment a year and a half later. According to the neighbors, Mrs. Rugg and another woman came to the property almost every weekday morning, remained there all day, and left again at the end of the business day.

the hearing for the summary judgment motions, the court stated, "[T]here's only one result you could reach from this," and "I'm satisfied as I reviewed this particular record that it is an ongoing problem." Report of Proceedings at 25-26. The Ruggs' motion for reconsideration was denied. This appeal followed.

## STANDARD OF REVIEW

■ ■ In reviewing a summary judgment order, the appellate court evaluates the matter de novo, performing the same inquiry as the trial court. *Kruse v. Hemp*, 121 Wn.2d 715, 853 P.2d 1373 (1993). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In its evaluation, a court is to consider all of the facts submitted, and all reasonable inferences that can be drawn from those facts in the light most favorable to the non-moving party, and may grant summary judgment only if reasonable people could reach but one conclusion. *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000).

■ Affidavits submitted in support of or in response to a motion for summary judgment must set forth such facts as would be admissible in evidence, must be made on personal knowledge, and must affirmatively show that the affiant is competent to testify as to his or her averments. CR 56(e); *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 753 P.2d 517 (1988). An affidavit does not raise a genuine issue of fact unless it sets forth facts evidentiary in nature, i.e., information as to what took place, an act, an incident, a reality as distinguished from supposition or opinion. *Id.* at 359. Likewise, ultimate facts, conclusions of fact, conclusory statements of fact or legal conclusions are insufficient to raise a question of fact. *Id.* at 359-60; *Kennedy v. Sea-Land Serv. Inc.*, 62 Wn. App. 839, 856, 816 P.2d 75 (1991).

## ANALYSIS

Code Violations

a. The Grading Violation

■■ Snohomish County Code 28.08.100(2) states that "[e]ach and every day or portion thereof during which any violation is committed, continued, permitted, or not corrected shall be deemed a violation for purposes of this title." Civil penalties for violation of any order to cease violation start accruing on the first day an order is posted and stop on the day the violation is stopped. Likewise, penalties for failure to obtain a permit accrue from the first day activity subject to the permit requirement is commenced and end on the day a permit is obtained.

The county sought civil penalties for the Ruggs' grading violations and failure to cease and abate those violations by obtaining a grading permit by April 11, 2000, the grading permit compliance deadline contained in the notice and order. On appeal, the Ruggs argue that they should not be liable for noncompliance with the grading permit deadline because they applied for a grading permit but were unable to obtain a permit by the time the summary judgment motion was filed, because of the county's own delays. This argument would be more persuasive if the Ruggs had at least applied for the grading permit by the April 11, 2000 deadline contained in the notice and order. But despite the fact that they were notified in the notice and order that the grading permit might require environmental review, setbacks, drainage and erosion controls, slopes, elevations and similar specifications, and that additional conditions might be required as a result of the environmental review, they did not even apply for the permit until July 11, 2000, three months past the deadline. The record also reflects, and the Ruggs acknowledge, that they failed to provide necessary information requested by the county, even after they applied for the permit.

We uphold the summary judgment that the Ruggs committed grading violations, and that those violations re-

mained unabated from and after the April 11, 2000 compliance deadline up to and including June 28, 2001, the date of the summary judgment hearing. The Ruggs have provided no citation to authority for the proposition that simply applying for a permit, without completion of the permitting process so as to obtain the permit, is sufficient to toll fine accrual. *See* RAP 10.3(a)(5) (a party's brief should contain argument in support of the issues presented, together with legal authority and references to relevant parts of the record); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (an appellate court will not consider an assignment of error that is not supported by legal authority and relevant citations to the record). Thus, the trial court properly ruled as a matter of law that the Ruggs committed grading violations, and that those violations continued unabated past the notice and order deadline and up to and including the date of the summary judgment order.

b. The Zoning Violation

The county also contends that its affidavits from the neighbors (including the neighbors' logs) and two enforcement officers establish beyond question that commercial activity continued at the Ruggs' residentially zoned property from and after the notice and order compliance deadline of January 13, 2000, and until May 23, 2001, the date that the county filed its motion for summary judgment.[3] We affirm the trial court's award of summary judgment on this issue. Although the Ruggs deny that they continued to base their business on the property after January 13, 2000, they do not disclose where their business was based during the year and a half from the issuance of the notice and order to the filing of the motion for summary judgment, if not on their property in rural Snohomish County. And they do not

---

[3] While the county alleges only noncompliance up to May 23, 2001, the trial court found noncompliance through June 28, 2001 (the date summary judgment was ordered). The Ruggs do not specifically contest that date. Instead, they argue that genuine issues of material fact preclude summary judgment on the issue of whether they complied with the January 13, 2000 deadline set in the notice and order.

dispute the accuracy of the neighbors' logs and declarations enumerating the movement of commercial vehicles onto and off of the property; rather, they contend that all of the commercial activity over the entire year and a half was strictly related to improvements on the property being performed for the Ruggs by BLR employees with BLR equipment.

As did the trial court, we have carefully compared the permits that were issued after the notice and order was issued and the dates of the county's interim inspections of work completed, with respect to the permitted work, with the neighbors' logs. And we have carefully reviewed the declarations of the Ruggs and of the several BLR employees whose affidavits declare that they came to the property only for purposes of performing personal work for the Ruggs related to improvements on their property, and at no other time. Viewed in the light most favorable to the Ruggs, it is clear that during the relevant period reparation work was performed for the purpose of abating the environmental damage resulting from the unpermitted grading, that a culvert was placed on the road that leads to the back of the property where it crosses the creek that bisects the property, that a septic drainfield was built, and that a pad was laid for the temporary mobile home that was brought onto the property pursuant to a permit.[4] The culvert work was completed in November 2000. The septic system was installed in December 2000 and approved in January 2001. The mobile home permit was issued in August 2000.[5] Thus, some of the commercial activity reflected in the neighbors' logs and declarations was clearly legitimate. But the neighbors' logs document far more commercial activity than can reasonably be accounted for by the permitted work. Rea-

---

[4] The garage/workshop was built prior to the events that gave rise to the notice and order. A permit was obtained for that structure.

[5] Because the Department of Natural Resources placed a mandatory building moratorium on the property (after the Ruggs cut down more than half the trees on the property without department approval) the county was precluded from issuing any additional permits for work on the property until 2006. *See* RCW 76-.09.060(3)(b)(i), (3)(b)(i)(C).

sonable minds can reach but one conclusion: The Ruggs were basing their commercial business operations on the property, running their business from there, and keeping heavy commercial vehicles on the property overnight and taking them out the next day, from and after January 13, 2000 and up to the date that the county filed its motion for summary judgment. And it is beyond dispute that if they had not been basing their business operation on the property, they would have promptly stated in their very first declarations that their business was based at another specific location, and they would have given that address so that their representations could be verified. And the BLR employees who provided declarations would have verified that the business was based at that other location as well. The failure of the Ruggs to state on the record where their business was based, if not on this property, is such a glaring omission of dispositive evidentiary fact that a trier of fact could reach only the same conclusion as that reached by the trial court: BLR was being operated out of the Ruggs' property in rural Snohomish County that is the subject of this enforcement action. Summary judgment in favor of the county was proper.

Nor does the fact that county inspectors came to the property several times during the relevant period, in response to neighbors' complaints, and found no violations on those dates, raise a genuine issue of fact, for it is undisputed that once the Ruggs discovered that code-enforcement officers had been coming to the property in the fall of 1999, the Ruggs told the county code-enforcement officers to always call before coming out to inspect the property, and that the Ruggs placed a locked gate over the only means of vehicular access to the property. In addition, after the notice and order were issued in December 1999, the officers were not permitted to look inside the large garage/workshop located on the property.

■ ■ In sum, there is a difference between weighing evidence and credibility—which are functions for a trier of fact and not for the trial or appellate court on summary

judgment—and (1) observing that the credibility of the neighbors' logs is unchallenged, (2) observing that the Ruggs' declarations about the work done on their property cannot possibly explain the sheer volume and type of activity described by the neighbors, even after drawing all reasonable inferences in favor of the nonmoving party, and (3) observing that the Ruggs failed to provide the single evidentiary fact that only they and their employees could provide—where they were basing their construction business if not on this property. All *reasonable* inferences must be drawn in favor of the nonmoving party upon summary judgment. Unreasonable inferences that would contradict those raised by evidence of undisputed accuracy need not be so drawn.

We affirm the trial court's grant of summary judgment to the county.

GROSSE and BAKER, JJ., concur.