# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BLACK DIAMOND DEVELOPMENT COMPANY, LLC, a Washington Limited Liability Corporation; LEE WITTENBERG, individually and on behalf of his marital community; WAYNE COURTNEY, individually and on behalf of his marital community, | ) ) ) ) ) ) ) ) | No. 76079-3-I<br><br>DIVISION ONE<br><br><br>UNPUBLISHED OPINION |
| Appellants, | ) ) | |
| v. | ) ) | |
| UNION BANK, N.A., | ) ) | |
| Respondent. | ) ) ) | FILED: June 4, 2018 |

LEACH, J. — Black Diamond Development Company LLC appeals the trial court's summary dismissal of its claims against Union Bank N.A. and its attorney fee award to Union Bank. Union Bank also challenges this attorney fee award. We affirm the trial court's dismissal of Black Diamond's claims against Union Bank. But we reverse the trial court's award of fees. The trial court abused its discretion in two ways: by awarding Union Bank fees incurred litigating an issue on which Black Diamond ultimately prevailed and by reducing the reasonable hourly rate for Union Bank's attorney without providing an adequate reason. We remand for the trial court to reconsider its fee award.

## FACTS

In November 2005, Frontier Bank loaned Black Diamond about $4 million. The original loan was set to mature on May 28, 2007. The parties extended the maturity date to September 25, 2010.

On April 30, 2010, Frontier Bank failed, and Union Bank acquired the loan. The loan matured on September 25, 2010. Black Diamond tried to renew or refinance the loan and sought permanent financing. In connection with these requests, Union Bank had the property appraised and an environmental survey conducted. Union Bank determined that Black Diamond did not meet its criteria for permanent financing.

After the loan matured, Union Bank notified Black Diamond that it was in default and the principal and interest were due in full. But Black Diamond continued to make monthly payments of $23,360, the same amount it had been paying before the loan matured.

In January 2012, Union Bank notified Black Diamond that if Black Diamond did not pay the loan in full, Union Bank would start charging default interest on February 4, 2012. Yet Black Diamond continued to make monthly payments in the same amount as before it defaulted.

On April 11, 2012, and again on May 14, 2012, Union Bank notified Black Diamond that it considered Black Diamond's payments to be partial payments

No. 76079-3-I / 3

that did not change the default status of the loan. In July 2012, Union Bank stopped accepting Black Diamond's payments altogether. Union Bank returned Black Diamond's July, August, September, and October payments.

On August 9, 2012, Black Diamond sued Union Bank. It alleged Union Bank had breached its contract by not providing permanent financing. It asked the court to require that Union Bank provide permanent financing and to prevent Union Bank from foreclosing on its property.

In October 2012, Black Diamond asked Union Bank to prepare a payoff demand. Union Bank provided a payoff demand that included the amount owed for principal, interest, default interest, and certain fees. To avoid foreclosure, Black Diamond obtained alternative financing from a third party and paid the amount requested.

In August 2013, the superior court granted Union Bank's summary judgment motion and dismissed Black Diamond's breach of contract and estoppel claims. The trial court also granted Union Bank's request for attorney fees, which Black Diamond paid.

On appeal, we affirmed the trial court's dismissal of the breach of contract and equitable estoppel claims.[1] We decided, however, that the trial court had

---

[1] Black Diamond Dev. Co. v. Union Bank, N.A., No. 71114-8-I, slip op. at 9-14 (Wash. Ct. App. Mar. 30, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/711148.pdf.

-3-

improperly failed to address Black Diamond's allegation of improper accounting.[2] We reversed so the trial court could consider the claim.[3] We also reversed the attorney fee award because neither party had prevailed yet.[4]

In August 2016, Black Diamond filed a new complaint. The complaint clarified the improper accounting claim and alleged new claims, including a claim for interest paid on the reversed attorney fee award.

Union Bank reviewed its records again and found that its payoff demand had overestimated certain fees by $62 and included a $5,000 appraisal fee that Union Bank had agreed not to charge to Black Diamond. Union Bank paid these amounts to Black Diamond with interest. Union Bank also paid 4.02 percent interest on the reversed attorney fee award, the parties' contractually agreed upon interest rate for the loan.

The trial court granted Union Bank's motion for summary judgment, dismissing the remaining claims. The court awarded attorney fees to Union Bank. The award included the attorney fees and costs previously granted in the first summary judgment motion. The trial court awarded fees at a reduced rate for Union Bank's attorney fees incurred after remand.

Both Black Diamond and Union Bank appeal.

---

[2] Black Diamond, slip op. at 18.
[3] Black Diamond, slip op. at 18.
[4] Black Diamond, slip op. at 23.

## ANALYSIS

Black Diamond appeals the summary judgment dismissal of its claims against Union Bank and the attorney fee award. Union Bank cross appeals the amount of the fee award. The trial court properly dismissed Black Diamond's improper accounting claim and claim for interest on returned attorney fees. But the trial court abused its discretion in calculating the attorney fee award.

### Improper Accounting

First, Black Diamond challenges the trial court's dismissal of its improper accounting claim. We review a summary judgment order de novo.[5] We review the facts and all reasonable inferences in the light most favorable to the nonmoving party.[6] A court properly grants summary judgment if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law.[7] Mere allegations or conclusory statements of fact unsupported by evidence are not sufficient to establish a genuine issue of material fact.[8]

Black Diamond claims questions of fact remain as to whether Union Bank included any improper charges in its payoff demand. Black Diamond specifically argues that several of Union Bank's improper actions caused charges to accrue.

---

[5] Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002).

[6] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

[7] CR 56(c).

[8] Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

"The rights and obligations of the parties to a credit agreement shall be determined solely from the written agreement."[9] Thus, we look to the agreement to decide whether Union Bank breached any duty it owed to Black Diamond when it calculated the payoff amount. As we explain below, it did not. Thus, Black Diamond fails to show any issue of fact exists about the improper accounting claim.

### 1. Terminating Automatic Payments

First, Black Diamond claims that Union Bank improperly canceled Black Diamond's ability to make automatic payments. Before May 2011, Black Diamond had made monthly payments automatically. In May 2011, Union Bank terminated Black Diamond's ability to make automatic payments. Black Diamond contends that this obliged Black Diamond to deliver each payment check by hand, causing delay and resulting in additional interest.

But Black Diamond does not show that it had any right to make automatic payments. Neither the construction loan agreement nor the later change-in-terms agreements provide any right to make automatic payments. Further, when Union Bank terminated Black Diamond's ability to make automatic payments, Union Bank was not required to accept any installment payment from Black Diamond because it was in default. Union Bank had no obligation to accept less

---

[9] RCW 19.36.110.

than the full amount owed. Because Union Bank had the right to refuse automatic payments, Black Diamond cannot identify any issue of fact about any interest that accrued as a result.

### 2. Default Interest

Next, Black Diamond claims that Union Bank improperly charged default interest. Union Bank first notified Black Diamond that it would begin charging default interest in its January 2012 default letter. The letter stated, "Bank hereby demands payment of these amounts by February 3, 2012." The letter also stated,

> In accordance with the Note, Bank is further exercising its right to invoke the default rate of interest provided for therein. Consequently, Borrower shall pay Bank interest on the aggregate outstanding principal amount of the Note at a rate per annum equal to 6 percent (6%) in excess of the Applicable Rate, calculated from February 4, 2012 until all amounts payable under the Note are paid in full.

Despite this notice, in February, March, and April, Black Diamond continued to make monthly payments in the same amount as before.

First, Black Diamond contends that the January 2012 letter did not meet statutory notice requirements. Black Diamond cites RCW 61.24.030(8) and lists several claimed defects based on this statute. But this statute is part of the deeds of trust act[10] and defines notices required before a trustee sale may occur.

---

[10] Ch. 61.24 RCW.

-7-

It does not define the notice required before default interest may be charged. Black Diamond cites no authority to show that the default letter Union Bank sent provided insufficient notice in this context.

Second, Black Diamond contends that the loan agreement does not permit Union Bank to charge default interest retroactively. Black Diamond claims that because Union Bank accepted February, March, and April payments that did not include the default interest, it could not retroactively collect that interest. Black Diamond does not show how Union Bank's delayed collection harmed it.

Union Bank did not try to collect any more interest than it would have received had Black Diamond paid the correct amount in February, March, and April. The agreement allows Union Bank to charge default interest "[u]pon default, including failure to pay upon final maturity." Union Bank told Black Diamond when it would begin to charge default interest. Black Diamond does not show that Union Bank did anything improper by collecting the accumulated interest in April rather than on a monthly basis beginning in February.

Black Diamond also asserts that Union Bank improperly applied payments to regular interest and default interest rather than to the principal and regular interest. Before May 2012, Union Bank applied Black Diamond's monthly payments to the principal and regular interest. But in May and June 2012, Union Bank applied Black Diamond's payment to default interest and regular interest.

Black Diamond claims that this conduct caused more interest to accrue on the principal. But the agreement authorized Union Bank to apply payments to "any accrued interest," regular or default.[11] Thus, it authorized Union Bank's decision to apply the payment to the interest instead of to the principal.

Black Diamond does not show how any action by Union Bank involving the default interest breached a duty owed to it. So Black Diamond does not raise an issue of fact about the default interest charged in the payoff.

### 3. Appraisal and Environmental Report Fees

Next, Black Diamond contends that Union Bank should not have included in the payoff demand the appraisal and environmental report fees. Union Bank ordered an appraisal and environmental report as part of its process for deciding whether to extend the term of the loan or provide permanent financing. Black Diamond contends that Union Bank should not have included these fees because they were not incurred for the foreclosure and, instead, related to the loan renewal request. But Black Diamond provides no authority for the proposition that the payoff demand could include only expenses related to the foreclosure. To the contrary, the construction loan agreement provides that Black Diamond is responsible for an array of fees:

---

[11] The agreement states that "payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges."

> Whether or not the Project shall be consummated, Borrower shall assume and pay upon demand all out-of-pocket expenses incurred by lender in connection with the preparation of loan documents and the making of the Loan, including without limitation the following: (A) all closing costs, loan fees, and disbursements; (B) all expenses of Lender's legal counsel; and (C) all title examination fees, title insurance premiums, appraisal fees, survey costs, required fees, and filing and recording fees.

The appraisal and environmental fees were related to the loan. More specifically, they were incurred because Union Bank was evaluating whether to grant Black Diamond's renewal request. Thus, Union Bank properly included the fees in the demand.

### 4. Returned Payments

Next, Black Diamond argues that Union Bank improperly cashed payment checks and issued refund checks. In July 2012, Black Diamond made its regular payment. But Union Bank did not apply the payment to the loan. Instead, it sent a partial payment letter stating that "the Bank will no longer accept partial payments in an amount less than the full amount required to reinstate the Loan." With the letter, the bank enclosed a refund check for the payment amount.

Black Diamond contends that Union Bank should have included interest with the returned amounts. It asserts that it is now entitled to interest for the time from Union Bank's cashing of its check until the refund. But Union Bank had the right to decline to accept the partial payments. Union Bank is not required to pay

interest simply because Black Diamond continued to try to make these payments.

### 5. Attorney Fees in Payoff

Next, Black Diamond challenges the attorney fees charged in the payoff demand. The payoff demand included $26,022.40 for attorney fees. Black Diamond contends that this amount was unreasonable and relies on the trial court's decision to reduce the hourly rates of Union Bank's counsel, DLA Piper, in its attorney fee award. But when the trial court awarded Union Bank attorney fees, it considered the fees charged in the payoff demand and reduced its award accordingly:

> Because plaintiffs paid the full amount of DLA Piper's fees charged to the Payoff Demand, but this Court finds that in this instance lower rates are reasonable, Union Bank's total fees award will be reduced by $7,222.40, which is the difference between the rates defense counsel actually charged and the rates this Court previously found to be "reasonable."

Thus, the trial court accounted for all unreasonableness of the attorney fees in the payoff demand. Black Diamond contends that the trial court's decision about the reasonableness of these fees somehow shows that summary judgment was improper. But because the trial court accounted for any unreasonableness of attorney fees in the payoff demand, Black Diamond does not show how further developing these facts would show that it is entitled to any more relief.

Black Diamond also challenges the fees Union Bank charged for work performed by Hacker & Willig, the trustee for the foreclosure proceedings. Specifically, Black Diamond claims that part of the trustee's fees could not have been connected to the default and should not be charged to Black Diamond. Again, Black Diamond cites no authority for the proposition that the payoff demand can include only those fees connected to the default. The construction loan agreement in fact provides that Black Diamond is required to pay "all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement." Black Diamond contends that this provision was superseded by the change-in-terms agreement, which provides that the borrower will pay any fees incurred in collecting amounts owed:

> ATTORNEY FEES; EXPENSES. Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit.

But this provision is not inconsistent with the provision in the construction loan agreement. And the change-in-terms agreement states that the agreement represents a change in the maturity date and that all other terms remain the same. Thus, the loan agreement permits Union Bank to recover the fees incurred in connection with assessing the viability of a loan refinance.

-12-

Black Diamond also challenges the Hacker & Willig fees on the basis that it performed work duplicative of work also performed by Assayag Mauss. Trial courts have discretion to decide attorney fee awards.[12] But a calculation of hours reasonably expended should not include duplicated effort.[13] Black Diamond cites generally to the invoices provided by the two firms and claims that Hacker & Willig's work on reviewing the default notice prepared by Assayag Mauss was duplicative. Both firms' invoices indicate that they worked on drafting the notice of default. But as trustee, Hacker & Willig could properly review the default notice prepared by Assayag Mauss. On this issue, the trial court could and did properly use its discretion to decide the amount Union Bank charged for this work was reasonable and therefore no question of fact existed.

### 6. Failure To Provide Information

Last, Black Diamond contends that Union Bank failed to provide accounting information. Black Diamond specifically contends that Union Bank failed to provide statements showing how charges were assessed and interest accrued, information that it claims could have allowed Black Diamond to dispute improper charges. But Black Diamond does not show the relevance of this to the claim before us. These allegations relate to Black Diamond's claim for

---

[12] Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632 (1998).
[13] Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983).

declaratory relief seeking an accounting, not the improper accounting claim. Black Diamond's complaint about the accounting information it received does not relate to its improper accounting claim.

### Interest Paid on Returned Attorney Fees

Black Diamond also challenges the trial court's dismissal of its claim for interest on the returned attorney fee award. It contends that Union Bank owes additional interest on the attorney fees Union Bank returned to it after the first appeal.

After the trial court granted Union Bank's summary judgment motion the first time, it awarded attorney fees to Union Bank. On appeal, we determined that the attorney fee award was premature. Accordingly, Union Bank returned the fee award but did not include interest on the fees, explaining that "[u]nder the circumstances, Black Diamond is not entitled to interest." After Black Diamond added a claim for interest owed on the returned attorney fees to its complaint, Union Bank paid Black Diamond interest on the attorney fees. Union Bank calculated the interest using the parties' contractually agreed upon loan interest rate of 4.02 percent. Union Bank asserted that because it paid the interest, Black Diamond's claim was now moot. The trial court agreed and dismissed the claim on summary judgment.

Appellate courts review awards of prejudgment interest for abuse of discretion, unlike awards of postjudgment interest that are reviewed de novo.[14] Black Diamond contends that the proper standard of review is de novo because it challenges the trial court's decision on a summary judgment motion. But the underlying issue involves the question of the amount of prejudgment interest, on which trial courts may exercise their discretion.[15] Thus, we apply an abuse of discretion standard to this issue.

Black Diamond argues that the statutory prejudgment interest rate should apply. Unless otherwise agreed between the parties, RCW 19.52.010 requires 12 percent interest for "[e]very loan or forbearance of money, goods, or thing in action."[16] Here, the contract does not specifically provide for the interest rate on an award of attorney fees. But because the contract does provide for interest on the loan, the trial court could determine that the parties had found this rate to be a reasonable rate. The trial court acted within its discretion when it decided that

---

[14] TJ Landco, LLC v. Harley C. Douglass, Inc., 186 Wn. App. 249, 255-56, 346 P.3d 777 (2015).

[15] TJ Landco, 186 Wn. App. at 255-56.

[16] Black Diamond relies on Humphrey Industries Ltd. v. Clay Street, Associates, 176 Wn.2d 662, 295 P.3d 231 (2013), to show that this 12 percent interest rate should apply here. But Humphrey does not stand for the proposition that the proper prejudgment interest rate on awards of attorney fees is 12 percent. It holds only that returned attorney fees accrue prejudgment interest, not postjudgment interest. Humphrey, 176 Wn.2d at 672-73. Humphrey does not control our decision on this issue.

the contractual interest rate was proper for the returned attorney fees. And even if we reviewed this issue de novo, we would reach the same result.

### Attorney Fees

Finally, Black Diamond and Union Bank both challenge the court's attorney fee award. We review whether a party is entitled to attorney fees de novo.[17] In order to reverse the award, the challenging party must show that the trial court manifestly abused its discretion.[18] A trial judge has broad discretion to determine the reasonableness of an award.[19] We review that decision for an abuse of discretion. Still, trial courts must exercise that discretion on articulable grounds.[20]

To decide a reasonable fee, a court first determines the lodestar amount.[21] It calculates the lodestar amount by multiplying the number of hours reasonably expended by the reasonable hourly rate.[22] "The court should discount hours spent on unsuccessful claims, duplicated or wasted effort, or otherwise unproductive time."[23] But "the fee award should not be reduced simply because

---

[17] N. Coast Elec. Co. v. Selig, 136 Wn. App. 636, 643, 151 P.3d 211 (2007).
[18] N. Coast, 136 Wn. App. at 643.
[19] N. Coast, 136 Wn. App. at 643.
[20] Mahler, 135 Wn.2d at 435.
[21] Bowers, 100 Wn.2d at 597.
[22] Bowers, 100 Wn.2d at 597.
[23] Chuong Van Pham v. Seattle City Light, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

the plaintiff failed to prevail on every contention raised in the lawsuit."[24] The result is what matters in deciding which party prevailed.[25] Thus, if a party has limited success, the court should award fees that are reasonable in light of that result.[26] No precise formula exists for determining the extent to which a party prevails, so "the trial court has discretion in determining the plaintiff's degree of success."[27]

### *Black Diamond*

Black Diamond raises several challenges to Union Bank's attorney fee award. We agree with only one.

First, Black Diamond contends that the fee award to Union Bank was too big because Union Bank did not prevail on the improper accounting claim. In a contract dispute, the court awards attorney fees only to a prevailing party.[28] "'[P]revailing party' means the party in whose favor final judgment is rendered."[29] Black Diamond points out that Union Bank acknowledged an error in accounting had occurred and the payoff amount was incorrect, albeit only slightly. But after

[24] Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).
[25] Hensley, 461 U.S. at 435.
[26] Chuong Van Pham, 159 Wn.2d at 540-41 (quoting Hensley, 461 U.S. at 440).
[27] Bright v. Frank Russell Invs., 191 Wn. App. 73, 81, 361 P.3d 245 (2015) (citing Hensley, 461 U.S. at 436-37).
[28] RCW 4.84.330.
[29] RCW 4.84.330.

Union Bank paid Black Diamond back for the error, Black Diamond continued to pursue its other claims. Union Bank moved for summary judgment, and the trial court granted that motion. Although Union Bank discovered a minor accounting error, it still substantially prevailed on the improper accounting claim. Here, the trial court granted summary judgment unreservedly in favor of Union Bank. Thus, the trial court acted within its discretion in determining that Union Bank was the prevailing party even though Union Bank discovered some improper accounting.

Next, Black Diamond challenges fees incurred on specific parts of the litigation. We address each challenge in turn.

First, Black Diamond contends that it should not be charged for attorneys who prepared for and attended oral argument but did not speak at the argument. Black Diamond contends that this time was unproductive and an award of fees is therefore unreasonable. We disagree. Attorneys may spend productive time preparing for oral argument and supporting the attorney who argues without actually arguing.

Second, Black Diamond challenges the fee award to the extent that it includes time spent researching the interest on the returned attorney fees. Black Diamond asserts that Union Bank's attorneys initially erroneously determined that it was not obligated to pay interest on the attorney fees. Indeed, Union Bank

claims that in April 2015, when it repaid the attorney fee award, it did not believe that it was required to pay interest on that award. But after discovering a more recent June 2015 decision that suggested otherwise,[30] Union Bank paid Black Diamond interest on the attorney fees. The court did not abuse its discretion by not reducing the award because Union Bank's attorneys changed their opinion as the result of a new decision.

Third, Black Diamond contends that Union Bank should not recover fees for time spent litigating various unsuccessful motions. It specifically challenges the time spent litigating the timeliness of Black Diamond's appeal,[31] Union Bank's unsuccessful motion to publish, and a motion to strike expert testimony that Union Bank never filed. But courts need not break down a prevailing party's success to such a degree.[32] The court properly determined that Union Bank was the prevailing party and did not need to account for these motions.

However, the trial court should have reduced the award to account for the fees incurred in defending against Black Diamond's motion for reconsideration before the first appeal. After the trial court granted Union Bank's first summary judgment motion, Black Diamond moved for clarification and reconsideration,

---

[30] See Arzola v. Name Intelligence, Inc., 188 Wn. App. 588, 592, 595, 355 P.3d 286 (2015) (holding that an award of prejudgment interest on a reversed award of damages, attorney fees, and costs was appropriate).

[31] See Black Diamond, slip op. at 5-8.

[32] Hensley, 461 U.S. at 435.

seeking clarification about whether it had also dismissed Black Diamond's improper accounting claim. The trial court denied the motion. But, on appeal, we reversed the dismissal of the improper accounting claim.[33] Thus, Black Diamond prevailed on this claim in the first appeal. Black Diamond calculated that Union Bank incurred $11,360 defending against the motion for reconsideration by considering Union Bank's attorneys' hourly rates and the time it claims it spent on the motion. The trial court could have reduced the award based on these facts and should have done so in light of Black Diamond's success in the first appeal.

### Union Bank

Union Bank also challenges the fee award. It contends that the trial court abused its discretion when it reduced the hourly rates for Union Bank attorneys. We agree.

In an October 17, 2013, order awarding attorney fees, the trial court found that a reasonable hourly rate for Union Bank's counsel, Stellman Keehnel, was $500 per hour. In its later award of fees, however, the trial court found that a reasonable rate for work performed by Mr. Keehnel in 2014 and 2016 was $395 per hour. The court found that "for the period following the October [17], 2013 fees award until the present, the reasonable rate in this case for defense counsel Stellman Keehnel and Andrew Escobar is $395 per hour, which is the same rate

---

[33] Black Diamond, slip op. at 18.

charged by plaintiffs' counsel Craig Rusk." Before Union Bank submitted the fee request, the court indicated in an oral ruling that it would use Rusk's fees, which were $395 per hour, as the benchmark for reasonableness in the case. Union Bank submitted a fee request a few days later and included evidence to support its claim that a $500 hourly fee was reasonable. But the trial court maintained in its findings of fact that $395 was a reasonable rate.

Union Bank asserts that the trial court's explanation for the reduction is inadequate. A trial court may consider a number of factors in setting the reasonable rate.[34] Factors include the attorney's usual fee, "the level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case."[35] Here, the court explained in an addendum, that it based this finding on the quality of the work performed and the number of years in practice: "This Court adjusted the hourly rates of Defendant's counsel as same as those charged by the Plaintiffs' counsels. Based upon the quality of the work performed, the number of years in practice, the Court finds these hourly rates as reasonable and appropriate for this matter." The trial court did not explain, however, why the reasonable hourly rate for work completed after October 17, 2013, was less than the rate for work completed earlier. Black Diamond

---

[34] See Bowers, 100 Wn.2d at 597.
[35] Bowers, 100 Wn.2d at 597.

-21-

contends that the later period of litigation involved less complex issues than the earlier litigation. But the trial court made no such finding. We agree with Union Bank that the trial court abused its discretion in reducing the fee award without adequately explaining why it decided to adjust the hourly rate downward for the later litigation.

As Union Bank acknowledged in oral argument, it has not requested fees on appeal. Thus, we award none.

## CONCLUSION

We affirm in part and reverse in part. We affirm the summary judgment for Union Bank on both the improper accounting claim and the claim for interest on returned attorney fees. We conclude, however, that the court abused its discretion in calculating Union Bank's attorney fee award. We remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Spearman, J._

_Appelwick, C.J._