IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SUSAN KITZMILLER, | DIVISION ONE |
| Appellant, | No. 81335-8-I |
| v. | UNPUBLISHED OPINION |
| KIRK SCHROEDER, | |
| Respondent. | |

COBURN, J. — Susan Kitzmiller appeals the trial court's grant of summary judgment to Kirk Schroeder, who she sued for negligence after sustaining injuries from a fall on his boat after sitting next to an open hatch. We hold that Schroeder had no duty to warn Kitzmiller that boats move on water or that the cabin hatch door was open because these were open and obvious dangers. The trial court did not err in dismissing Kitzmiller's entire complaint because she fails to provide any factual or legal bases for her other theories of negligence. We affirm.

FACTS

On July 2, 2016, appellant Susan Kitzmiller joined respondent Kirk Schroeder on his sailboat in Seattle, Washington. Schroeder's sailboat was a 23-foot sailboat called a Ranger 23. The sailboat had a lower cabin, below the deck, accessible through a hatch door in the middle of the boat which can be opened and closed. Kitzmiller and Schroeder had connected online through a

Citations and pin cites are based on the Westlaw online version of the cited material.

Pacific Northwest Sailing Group on Meetup.com; this was their first meeting in person. They planned to sail to Poulsbo, Washington and join other members of the Pacific Northwest Sailing Group for a multi-day gathering of sailboats in Liberty Bay for the Fourth of July holiday weekend.

They sailed to Poulsbo in about three hours. Upon arrival, Schroeder tied his boat to the other boats from the Pacific Northwest Sailing Group in Liberty Bay. The boats were tied up to each other in the bay away from the docks; this is referred to as a "raft up." At least five other boats were already tied up to each other in the "raft up." Schroeder's boat was the smallest and was in the outermost position in the "raft up." The group went ashore to Poulsbo where they socialized at a bar and then returned to the sailboats to spend the night. Kitzmiller said she had been through the hatch door down to the cabin to sleep and one or two other times as well.

The next morning, July 3, the group again went ashore to Poulsbo. By late in the afternoon, the group had returned to the "raft up" and was socializing on the boats. More boats arrived in the bay. Kitzmiller said that as it was growing dark she was sitting alone on a boat on the opposite end of the "raft up" from Schroeder's boat. She said Schroeder came up and told her she could not be on that boat and that she needed to return to his boat. She followed Schroeder back across the boats to Schroeder's boat.

As the fireworks started, Kitzmiller was seated on the port side, cabin top of the boat with her legs hanging down. From her seated position, Kitzmiller was photographing the fireworks with her cell phone camera with her arms extended

2

forward. Kitzmiller said that the boat unexpectedly moved, or rocked, and she fell from where she was sitting to the deck below. She said she did not know what caused the boat to rock or move. She said she screamed and Remy Lang, another passenger on the boat, came quickly to help her.

The fall was not witnessed by anyone. Schroeder said that he saw in his peripheral vision that Kitzmiller had moved to sitting on the lazarette seat with both of her feet on the seat in front of her. Schroeder said he did not think anything was wrong and returned his attention to the fireworks. Lang said she had a memory of the boat shaking or moving and she looked down and saw Kitzmiller sitting on the lazarette seat. Lang said Kitzmiller still had her camera out, so she did not react in any way at that point. Lang stated, "…I don't remember anything significant happening other than she's sitting there now. Like, it didn't even really occur to me until later that she slipped and fell there."

After the fall, Lang and her husband took Kitzmiller back to her own car. Kitzmiller drove herself to the hospital. Kitzmiller alleges injuries to her hands, wrists, back, and knee.

Almost three years later, on February 27, 2019, Kitzmiller sued Schroeder for negligence.

On October 25, 2019, Schroeder moved for summary judgment, alleging that Kitzmiller's negligence claim failed as a matter of law because she could not prove the essential elements of duty and causation.

On February 18, 2020, Kitzmiller filed her opposition to Schroeder's motion for summary judgment. Kitzmiller argued that Schroeder's motion did not

3

address all of her theories of liability. She also argued that the hatch was not an open and obvious danger, and even if it was an open and obvious danger, Schroeder still had a responsibility to protect his passengers. She said Schroeder's causation argument fails because causation is a question for a jury.

Attached to Kitzmiller's opposition was a declaration from Captain James Cushman. Cushman opined that Schroeder was negligent because he failed to provide Kitzmiller with a pre-departure vessel safety and familiarization orientation and because he should have advised her to move to a "designated and safer" sitting area. Cushman speculated that these actions would have prevented Kitzmiller's injuries.

On February 28, 2020, the trial court conducted a hearing on Schroeder's motion for summary judgment. The court granted Schroeder's motion for summary judgment after determining that Kitzmiller did not establish the essential element of duty because there is no duty to warn of objectively open and obvious dangers.

Kitzmiller moved the trial court to reconsider. The trial court denied her motion.

Kitzmiller appeals.

DISCUSSION

<u>Legal Standards</u>

We review summary judgments de novo. <u>Strauss v. Premera Blue Cross</u>, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). "Summary judgment is appropriate when "there is no genuine issue as to any material fact . . . and the moving party

4

is entitled to a judgment as a matter of law.'" Id. (alteration in original) (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 522, 192 P.3d 886 (2008); CR 56(c). We must construe all facts and inferences in favor of the nonmoving party. Scrivener v. Clark College, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

Federal maritime law governs this action. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct 406, 3 L.Ed.2d 500 (1959). (holding that federal maritime law applies to a claim for breach of duty to a passenger of a cruise ship sailing in navigable waters). "To recover for negligence, a plaintiff must establish: (1) duty; (2) breach; (3) causation; and (4) damages." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1070 (9th Cir. 2001).

Duty to warn

Kitzmiller alleges that Schroeder should have warned her of the danger of sitting beside the open cabin hatch. The gist of her argument is that her fall was caused by a sudden movement of the boat, and that if the hatch door had been closed, she could have grabbed the hatch door to break her fall, thus preventing her injuries. In response, Schroeder responds that he had no duty to warn Kitzmiller that boats move on water or that the cabin hatch door was open.

Whether a duty exists is a question of law we review de novo. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). "[T]he owner of a ship in navigable waters owes to all who are on board . . . the duty of exercising

5

reasonable care under the circumstances of each case." <u>Kermarec v. Compagnie Generale Transatlantique</u>, 358 U.S. at 632.

Courts have held that there is no duty to warn of an obvious and open danger, including the fact that boats move on water, and they have granted summary judgment on this basis. In <u>Summers v. Motor Ship Big Ron Tom</u>, 262 F. Supp. 400, 401 (D.S.C. 1967), the plaintiff sued for personal injuries allegedly sustained when she was a passenger aboard a fishing boat. She alleged that she was stationed on the deck of the boat, holding onto the railing, when the boat "suddenly encountered severe and rough seas and swirls causing the bow to heave and pitch, throwing her to the deck and breaking her ankle." <u>Id.</u> She alleged that the boat operator was negligent. Specifically, she claimed that the boat operator failed to warn her that her position at the bow of the boat was unsafe under the existing circumstances—she alleged unfavorable weather conditions—"thereby failing to discharge his duty to her. . ." <u>Id.</u>

The court concluded that "[t]here were no unusual or dangerous conditions resulting from the weather, tide, or wind existing on that occasion which required the vessel" to give the passengers "instructions or warnings as to where they should ride, or what they should do under the circumstances." <u>Id.</u> at 405. The court further reasoned that it is common knowledge that boats move on water.

> …'It is a matter of common knowledge that the movements of fishing boats and other small water craft[s] are constantly affected by the waves and thereby made unsteady, and that this is true without regard to the care exercised in their operation. The bigger the waves the more vigorous is the impact on the boat and the more severe and sudden the lurch or jerk caused thereby. Anyone

6

who has ever been on such a boat or who has observed their movements from the shore, particularly when the tide was coming in, has observed how the waves upon occasion cause these boats to pitch and churn. Such vigorous and unpredictable movements may readily cause a person to lose his balance and fall. This is simply one of the natural hazards of this type of venture.' Lockhart v. Martin, 159 Cal.App.2d 760, 324 P.2d 340, 341, 1962 Am.Mar.Cas. 1076, 1078 (1958).

Id. at 405. The Summers court held that the plaintiff had not established negligence. Id. at 405.

In The Complaint of Boston Boat III, LLC v. Galioto, 2015 WL 5444162 (S.D. Fla. 2015), the plaintiff sued for negligence after he sustained injuries on a boat because a fellow passenger lost her balance and fell into him knocking them both to the ground. Id. at *1. The court rejected the plaintiff's claim that there was a duty to warn passengers about the dangers of falling, analogizing the case to Summers. The court reasoned, "There are hazards inherent to standing on a boat. Boats float on water which, by nature, is fluid. Therefore, boats are prone to sudden movement caused by the currents, the wind, the wakes of other boats, the movements of its passengers, and sometimes wildlife. Reasonable people know that boats are not stationary even when they are at rest. As such, the danger that a passenger standing on a moving boat might fall down is an open and obvious danger for which no duty to warn is required." Id. at *6. The court held that the plaintiff was entitled to summary judgment on his claim of negligence that the defendants had failed to warn passengers of the dangers of falling during navigation. Id. at *3, *11.

In Salazar v. Norwegian Cruise Line Holdings, Ltd., 188 F.Supp. 3d 1312 (S.D. Fla 2016), a cruise passenger sued the cruise operators for negligence

7

after he allegedly sustained injuries from slipping and falling on liquid that had accumulated on the dance floor of a disco onboard the cruise ship. Id. at 1314. The court found that the spilled liquid was an open and obvious condition and thus the cruise operator had no duty to warn of its existence. Id. at 1317. The court granted the cruise operator summary judgment on that basis. Id.

Here, Kitzmiller alleges that Schroeder should have warned her of the danger of sitting beside the open cabin hatch. However, Kitzmiller said she knew that the hatch was there and that she had been in and out of the hatch door She said she did not recall if she noticed that the hatch was open when she sat down as the fireworks started. But she observed that Schroeder was going in and out of the hatch door, opening the hatch door, and leaving it open. Kitzmiller does not allege that the open hatch was hidden, concealed, or otherwise not obvious. A photograph of the sailboat shows the open hatch to be large and apparent to a reasonable person sitting on either side of it.

Kitzmiller alleges on appeal that she felt Schroeder "directed" or "forced" her to sit on the cabin top. But the record does not support such an allegation even when all inferences are viewed in Kitzmiller's favor. Kitzmiller says that when they returned to Schroeder's sailboat, Schroeder went first and "said, you can sit there or wherever. . . He, you know, does, like, a wave, like, you know, and so that was fine. I just sat right there on that spot . . ." At the time Kitzmiller took a seat before she fell, it was her second day on the sailboat; she had sailed

from Seattle to Poulsbo and spent the night on the sailboat. She was not boarding the sailboat for the first time.

It is undisputed that Schroeder did not direct Kitzmiller to move to another seating area. But the record is absent of any indication that the designated seating areas were "unusable" or "not available for her to use" as Kitzmiller alleges on appeal. Kitzmiller alleges in an interrogatory response that "[t]here were no cushions and no chairs for Plaintiff [Kitzmiller] to sit on in Schroeder's boat." It does not follow that the lack of cushions or extra chairs on the boat transformed the boat's designated seating area—the built in seating that the parties are apparently referring to when they refer to the designated seating area—to be unusable or not available. Indeed, Schroeder and Lang say that after Kitzmiller fell, they saw her sitting on the lazarette seat with her feet also on the seat.

Regarding the fact that boats move on water, Kitzmiller stated that she had experienced boats moving on the water and that she had been on a sailboat between 10 and 15 times in the years before she went on Schroeder's sailboat. On her Meetup.com profile, in the Pacific Northwest Sailing Group, she listed the following boating background: "Been operating ski boats my entire life. Been on a 54' sail boat for 3 years." Kitzmiller said she did not know what caused the alleged sudden movement of the boat before her fall, and she did not believe that Schroeder caused the boat to move. The boat was rafted up, and not sailing,

9

when she fell, and she does not allege bad weather or water conditions that may have posed a greater-than-normal danger.

In short, Kitzmiller admits that she knew the hatch was there, that the hatch door had sometimes been left open, and that boats move on water. These conditions, which she now alleges were dangerous, were open and obvious. Schroeder had no duty to warn her of them. Even viewed in the light most favorable to Kitzmiller, as the nonmoving party, she has not raised a genuine issue of material fact.

Kitzmiller argues that we should "hesitate" to "import" the concept of an open and obvious danger into federal maritime law. Kitzmiller contends that that open and obvious danger is a "premises liability" concept tied to the distinction in Washington State law between a licensee and an invitee. But Salazar and Boston Boat III, LLC illustrate that the concept of an open and obvious danger is already a part of federal maritime law. We are not importing the idea of licensee and invitee into federal maritime law as Kitzmiller claims. We agree with Kitzmiller that Schroeder owed her a duty of reasonable care under the circumstances as his passenger. See Kermarec, 358 U.S. at 632. This duty of reasonable care simply does not include the duty to warn of open and obvious dangers.

Kitzmiller argues that the issue of failure to warn is not a legal question of duty to be decided by the court, but instead, is a factual question of breach to be decided by a jury. Kitzmiller further argues that whether a danger is open and obvious is also a question of fact for the jury. But in Salazar and Boston Boat III,

10

LLC the courts treated the issue of failure to warn about open and obvious dangers as a legal question of duty and decided the issue on summary judgment. They did not treat the issue as a factual question of breach to be decided by a jury. The courts concluded as a matter of law that the dangers at issue were open and obvious as a matter of law and granted summary judgment on that basis.

Kitzmiller cites to other cases where courts have held, under the circumstances present in those cases, it was for the jury to decide whether a claimed danger was open and obvious. See, e.g., Diczok v. Celebrity Cruises, Inc., 263 F. Supp. 3d 1261, 1265 (S.D. Fla. 2017) (determining whether cruise ship had duty to warn rests on if a table was open and obvious where it was alleged that cruise ship had removed yellow chairs that had surrounded a dark table that blended in with a dark wall and dark carpeting); Nathans v. Carnival Corp., 2018 WL 6308694 (S.D. Fla. 2018) (determining that plaintiff successfully established a question of whether a reasonable person could even see the water collected on the deck of the ship at the time of the incident and if the deck was unreasonably slippery when wet). But we conclude that under the circumstances here, for the reasons detailed above, Kitzmiller fails to raise a genuine issue of material fact.

Kitzmiller relies on the declaration and report of her expert, James Cushman, to support her argument that Schroeder breached his duty of reasonable care. An affidavit does not raise a genuine issue of fact unless it sets forth facts evidentiary in nature, i.e., information as to what took place, an act, an

11

incident, or a reality as distinguished from supposition or opinion. <u>Johnson v. Recreational Equip., Inc.</u>, 159 Wn. App. 939, 954, 247 P.3d 18 (2011) (quoting <u>Snohomish County v. Rugg</u>, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002). Likewise, ultimate facts, conclusions of fact, conclusory statements of fact, or legal conclusions are insufficient to raise a question of fact. <u>Id.</u>

Cushman opined that Schroeder should have provided Kitzmiller a pre-departure safety and orientation briefing and should have told her to move to a designated seating area, speculating that these actions would have prevented Kitzmiller's injuries.

> Based on the for[e]going, I feel that Ms. Kitzmiller, though responsible for her own safety, actions and inactions, was in an alien environment, a situation which should have been recognized by Mr. Schroeder and appropriate preventative action taken by him. Had Mr. Schroeder provided the industry standard pre-departure safety and orientation briefing, and assumed the mantel of the person in charge and responsible, it is likely that Ms. Kitzmiller would not have sustained the serious injuries being litigated.
>
> . . .
>
> It is my opinion that the area where Ms. Kitzmiller was sitting was NOT a designated seating area. There was a designated seating area just in front of Ms. Kitzmiller. Mr. Schroeder should have advised Ms. Kitzmiller not to sit where she was sitting, and to move to a designated and safer location. Such a move would have precluded Ms. Kitzmiller's unfortunate and preventable fall.

In light of Kitzmiller's admission that she does not know what caused the alleged sudden boat movement before her fall, Cushman's opinion that either a pre-departure safety briefing or sitting in a designated seating area would have prevented her injuries is speculation and conclusory. This is not enough to preclude summary judgment. <u>See, e.g.</u>, <u>Strauss v. Premera Blue Cross</u>, 194

Wn.2d 296, 301, 449 P.3d 640 (2019) (speculation and conclusory statements will not preclude summary judgment; the expert's opinion must be based on fact and cannot simply be a conclusion or based on an assumption if it is to survive summary judgment).

Cushman further opined, regarding the ultimate legal conclusion of negligence, "Mr. Schroeder was negligent in that he failed to provide Ms. Kitzmiller with a pre-departure vessel safety and familiarization orientation. . ."[1] "It is my opinion that Mr. Schroeder was **negligent** by his actions and inactions, and contributed to the fall in which Ms. Kitzmiller sustained serious injuries." (emphasis in original). Cushman's statement of this legal conclusion is insufficient to raise a genuine issue of material fact. See Johnson, 159 Wn. App. at 224. See also Simmons v. City of Othello, 199 Wn. App. 384, 392, 399 P.3d 546, 550 (2017) (courts will not consider legal conclusions in a motion for summary judgment).

Cushman's opinions and speculation also appear to be based on the inadequate factual basis that Kitzmiller had little boating experience. Cushman states, for example, that "while Ms. Kitzmiller had some experience in boating it

---

[1] Cushman references the appendix of a publication titled "America's Boating Course," which lists a "Required Passenger Briefing and Pre-Departure Checklist." The checklist states that "All persons on board should receive a pre-departure briefing" on various subject matters including "boat stability and cautions for moving about." The checklist does not include directions to designated seating areas. In any event, an industry publication suggesting an orientation about boat stability does not change established law that operators have no duty to warn of an obvious and open danger, including the fact that boats move on the water. See Summers, 262 F. Supp. at 405; Boston Boat III, LLC, 2015 WL 5444162 at *5-7; Salazar, 188 F. Supp. 3d at 1317.

was very limited and [she] was completely 'out of her element' on the boat," that Kitzmiller had "very little knowledge of boats in general," and that she was in an "alien environment."  Cushman's portrayal of Kitzmiller as someone with little boating experience contradicts her own online profile in the Pacific Northwest Sailing Group where she states that she has been operating ski boats her entire life and been on a 54-foot sailboat for three years.  Because Cushman's opinions are based on an inadequate factual basis, we do not accord his opinions sufficient weight to preclude summary judgment.  See Rothweiler v. Clark County, 108 Wn. App. 91, 100, 29 P.2d 758 (2001) (in the context of a summary judgment motion, an expert must support his opinion with specific facts, and a court will disregard expert opinions where the factual basis for the opinion is found to be inadequate).

In short, Schroeder had no duty to warn Kitzmiller that boats move in water or that the hatch door was open because these are open and obvious dangers.  See, e.g., Summers, 262 F. Supp. at 405; Boston Boat III LLC, 2015 WL 5444162 at *5-7; Salazar, 188 F. Supp. 3d at 1317.  As these cases illustrate, depending on the circumstances, the legal issue of duty and whether a danger is open and obvious can be a legal issue decided by a court on summary judgment.  We hold that Kitzmiller fails to raise a genuine issue of material fact regarding these issues.

<u>Dismissal of Kitzmiller's entire complaint</u>

Kitzmiller argues that the trial court erred by dismissing her entire complaint because Schroeder moved for summary judgment only on his failure to warn. In addition to the duty to warn about the open hatch and movement of the boat, addressed above, Kitzmiller's complaint alleges that Schroeder was negligent in "consuming alcohol" throughout the day on the boat; failing to keep a proper lookout; tying the boat to other sailboats in the bay; failing to provide "adequately trained and competent officers and/or crew;" and "failing to timely and properly remove" her from the boat.

Kitzmiller fails to provide any factual or legal bases to support these theories. Kitzmiller said she did not know if Schroeder was drunk. Kitzmiller said Schroeder seemed to know what he was doing in operating the boat and she did not feel unsafe in the way he operated the boat. Kitzmiller repeatedly stated that she did not know what caused the alleged sudden movement of the boat before her fall and that she did not think Schroeder caused the movement. Because Kitzmiller does not know what caused the alleged sudden boat movement, she cannot demonstrate how the "raft up" or alleged lack of a lookout caused her fall. Kitzmiller states that Schroeder's sailboat was designed to be manned and operated by one person, which contradicts her theory that Schroeder was negligent by failing to have officers or crew. She offers no reason that Schroeder should have removed her from his boat.

As explained above, the gist of Kitzmillers allegations is that a sudden boat movement and the open hatch door caused her fall and injuries. Under the

facts of this case, Kitzmiller fails to demonstrate a connection between any of her other alleged theories of negligence and her fall.  The trial court did not err in dismissing Kitzmiller's complaint.

<u>Schroeder's motion to strike portions of Kitzmiller's brief</u>

Schroeder includes in his brief a separate motion to strike portions of Kitzmiller's brief because they contain what he describes as "inflammatory and baseless remarks."  "Motions to strike sentences or sections out of briefs waste everyone's time."  <u>O'Neill v. City of Shoreline</u>, 183 Wn. App. 15, 24, 332 P.3d 1099 (2014) (quoting <u>Redwood v. Dobson</u>, 476 F.3d 462, 471 (7th Cir. 2007)).  So long as there is an opportunity to include argument in the party's brief, the brief is the appropriate vehicle for pointing out allegedly extraneous materials— not a separate motion to strike.  <u>Id.</u> (quoting <u>Engstrom v. Goodman</u>, 166 Wn. App. 905, 909 n. 2, 271 P.3d 959 (2012).  "A party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits."  RAP 17.4(d); RAP 10.4(d).

First, Schroeder did not properly include the motion in his brief because the motion would not preclude hearing the case on the merits if granted.  RAP 17.4(d); RAP 10.4(d).  In addition, Schroeder was afforded ample opportunity to point out allegedly extraneous material through argument in his brief.  The court has the record before it and is well able to critically review the record and give

appropriate weight to the parties' briefing.  We deny Schroeder's motion to strike.

Affirmed.

_____
Coburn, J.

WE CONCUR:

_____
Verellen, J.

_____
Dwyer, J.